Dorothy C. PARKER

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellant.

No. 76–1416.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1977.

Decided June 30, 1977.

Paul Blankenstein, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellant.

Linda R. Singer, Washington, D. C., for appellee.

John L. Burke, Jr. and Roderic V. O. Boggs, Washington, D. C., filed a brief on behalf of Washington Lawyers' Committee for Civil Rights Under Law as amicus curiae urging affirmance.

Before BAZELON, Chief Judge, and WRIGHT and ROBB, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This appeal is from the District Court's judgment [1] requiring appellant to pay attorneys' fees incurred by appellee. The only issue presented is whether in a suit brought by a federal employee under Title VII of the Civil Rights Act of 1964 [2]—in which the employee is the "prevailing party" [3]—a federal District Court has discretion to award attorneys' fees that include compensation for legal services performed in connection with related administrative proceedings.

Our review of the statutory language, legislative history,[4] case law, and relevant

policy concerns convinces us that a District Court does have such discretion and that the judgment below should be affirmed.

## I. THE FACTS

On February 15, 1973 appellee Dorothy Parker filed an administrative complaint with the Office of Education (OE) of the Department of Health, Education and Welfare (HEW). Parker, an employee of OE, alleged that she had been discriminated against on racial and sexual grounds and sought immediate promotion from her position as a GS–9 to a GS–14 with appropriate back pay.

Shortly after the complaint was filed, OE's Equal Employment Office began an investigation of the discrimination charges. An investigative report was filed on September 7, 1973. It concluded that appellee had been discriminated against and recommended that she be promoted to GS–13. Apparently no further action was taken until the spring of 1974 when HEW promoted appellee to GS–11, with assurances that she would soon be promoted to GS–13 [5] as the original investigative report had recommended. In the spring of 1975, however, HEW issued its final determination stating that it would disregard the investigative report and take no further remedial action on appellee's discrimination claim.

Consequently, appellee—still a GS–11— filed the instant suit on May 21, 1975.[6] Appellant filed his answer on July 22, 1975

---

1. *Parker v. Matthews* [sic], 411 F.Supp. 1059 (D.D.C.1976).

2. Title VII is codified at 42 U.S.C. §§ 2000e to 2000e–17 (1970 & Supp. V 1975). Appellee brought her suit pursuant to § 717(c) of Title VII, 42 U.S.C. § 2000e–16(c) (Supp. V 1975).

3. 42 U.S.C. § 2000e–5(k) (1970) as made applicable by 42 U.S.C. § 2000e–16(d) (Supp. V 1975). Although appellant contended in the District Court that appellee was not the prevailing party within the language of the statute, this argument has been abandoned on appeal.

4. After careful examination of the legislative history, we conclude that Congress did intend to authorize the award of attorneys' fees for the services in question here. In the interest of completeness, we have set forth as an appendix

to this opinion a discussion of those portions of the legislative history which appellant and appellee cite in support of their respective positions.

5. The District Court's statement that appellee was assured she would soon be promoted to GS–*14*, 411 F.Supp. at 1061, is apparently a typographical error.

6. Although the agency had not yet issued its final decision, 180 days had passed since appellee had filed her administrative complaint. Appellee had, therefore, sufficiently exhausted the administrative process and was entitled to institute judicial action. Section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c) (Supp. V 1975).

and denied all allegations in the complaint. Despite these denials, less than two months later—on September 18, 1975—HEW issued a formal decision to the effect that appellee had been discriminated against and should be retroactively promoted to GS–13 with appropriate back pay.[7]

On November 14, 1975 the District Court entered an order approving this settlement of the suit but reserving the question of attorneys' fees. After considering the parties' submissions on the question, the District Court on April 1, 1976 awarded attorneys' fees of $8,770.36.[8] The award included compensation for time spent on the case at both "administrative and judicial levels." *Parker v. Matthews [sic]*, 411 F.Supp. 1059, 1066 (D.D.C.1976). This appeal followed.[9]

## II. THE STATUTORY FRAMEWORK

Title VII of the Civil Rights Act of 1964[10] prohibits employment discrimination based on race, color, religion, sex, or national origin. Sections 703, 704 of Title VII, 42 U.S.C. §§ 2000e–2, 2000e–3 (1970 & Supp. V 1975). Originally, however, this statutory prohibition was inapplicable to federal employees. Section 701, 42 U.S.C. § 2000e(b). *See Brown v. GSA,* 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976). Thus, "[a]lthough federal employment discrimination clearly violated both the Consti-

tution, *Bolling v. Sharpe,* 347 U.S. 497 [74 S.Ct. 693, 98 L.Ed. 884] (1954), and statutory law, 5 U.S.C. § 7151," specific implementing legislation was lacking and "the effective availability of either administrative or judicial relief was far from sure." *Id.* In fact, federal employees faced numerous and difficult obstacles in attempting to enforce their right of freedom from employment discrimination. *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108, 115, 128–129, 132, 133–136 & n.67 (1975).

This anomaly was eliminated in 1972 by the addition of Section 717 to Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e–16 (Supp. V 1975).[11] *Hackley v. Roudebush, supra,* 529 F.2d at 115–116. Subsection 717(a) of Title VII, 42 U.S.C. § 2000e–16(a) (Supp. V 1975), provides that "[a]ll personnel actions affecting employees or applicants for employment * * * in executive agencies [of the United States] * * * shall be made free from any discrimination based on race, color, religion, sex, or national origin." To effectuate this provision subsections 717(b) and (c), 42 U.S.C. § 2000e–16(b), (c) (Supp. V 1975), establish complementary administrative and judicial enforcement provisions. Subsection (b) authorizes the Civil Service Commission to enforce the provisions of subsection (a)

7. The final agency decision had been issued without an administrative hearing pursuant to appellee's request. *See* 5 C.F.R. § 713.-217(b)(3) (1977).

8. Appellant raises only the broad question whether fees for services at the administrative level may be awarded. He does not challenge the specific arithmetical calculations used by the District Court to arrive at the amount awarded.

9. The District Court ordered the fee paid to appellee's counsel within ten days of the date of the order. Upon receipt of such payment counsel was to reimburse appellee for any fee payments she had made to counsel. 411 F.Supp. at 1069. Appellant moved to stay, pending appeal, that part of the order directing payment of the fee by a date certain. JA 59. The District Court denied that motion on April 27, 1976, but did temporarily stay the order requiring payment. JA 59.

On May 5, 1976, however, appellant and appellee entered into a stipulation and agreement providing that during the pendency of the appeal to this court appellee "will not request payment of the $8,770.36 in attorney's fees awarded by the district court * * *." JA 63. Appellant states that "the right of the government as well as other litigants to an automatic stay pending appeal of this type of money judgment is not firmly settled" and requests that at an appropriate time this court address this question. Appellant's br. at 5–6 n.8. Because the question has not been briefed or argued on this appeal, however, and because appellee agreed not to request the fee award while this appeal was pending, we express no views on the subject.

10. Pub.L. No. 88–352, 78 Stat. 253 (enacted July 2, 1964).

11. Enacted as § 11 of the Equal Employment Opportunity Act of 1972 on March 24, 1972. Pub.L. No. 92–261, § 11, 86 Stat. 111.

"through appropriate remedies, including reinstatement or hiring of employees with or without back pay," to issue "rules, regulations, orders and instructions as it deems necessary and appropriate" to carry out its responsibilities under the Act, and to review equal employment opportunity plans that are annually submitted to it by each agency and department.

Subsection 717(c) permits an aggrieved employee or applicant for employment to file a civil action in a federal District Court to review her claim of employment discrimination. Before filing in District Court, however, the employee must meet certain administrative prerequisites. Initially, the complainant must seek relief in the agency that has allegedly discriminated against her. If not satisfied with relief obtained from the agency, the complainant may seek further administrative review with the Civil Service Commission. Alternatively, the complainant, within 30 days of receipt of notice of the agency's final decision, may file suit in federal District Court without appealing to the Civil Service Commission. If she does appeal to the Commission, she may file suit within 30 days of the Commission's final decision. "In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action." *Brown v. GSA, supra,* 425 U.S. at 832, 96 S.Ct. at 1968. In *Brown* the Supreme Court held that Section 717 provides the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829, 96 S.Ct. at 1966. Consequently, failure to comply with the administrative pre-conditions of Section 717, as in *Brown,* precludes the complainant from even getting into court.

Subsection 717(d) of Title VII, 42 U.S.C. § 2000e–16(d) (Supp. V 1975), plays a key part in this appeal. It states: "The provisions of section 706(f) through (k) [42 U.S.C. §§ 2000e–5(f) through 2000e–5(k) (1970 & Supp. V 1975)], as applicable, shall govern civil actions brought hereunder." [12] The subsections thus incorporated, which until Title VII was amended in 1972 applied only to private sector employees, govern such issues as venue, scope of relief, and—of foremost significance for our purposes—attorneys' fees. Specifically, Section 706(k), 42 U.S.C. § 2000e–5(k) (1970), provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

The effect of Section 717(d) coupled with Section 706(k) is, therefore, to allow a federal court, in its discretion, to award reasonable attorneys' fees to a federal employee or applicant who is the prevailing party in "any action or proceeding" under Title VII. Despite the apparent straightforwardness of the attorney fee provision, however, the parties to this appeal are sharply divided as to its proper interpretation and, in particular, as to the breadth to be accorded the single phrase "any action or proceeding."

Appellant and appellee agree that this language permits courts to award attorneys' fees to a prevailing party for at least the work performed by her attorney in connection with any lawsuit a complainant may file under Title VII. They disagree,

---

**12.** It is now established that the phrase "as applicable" is to be understood as simply reflecting the inapplicability to federal employment discrimination claims of "provisions in §§ 706(f) through (k) detailing the enforcement responsibilities of the EEOC [Equal Employment Opportunity Commission] and the Attorney General" which are relevant only to private sector employment discrimination claims. *Chandler v. Roudebush,* 425 U.S. 840, 847, 96

S.Ct. 1949, 1953, 48 L.Ed.2d 416 (1976). The "as applicable" language does not allow a court to " 'act in whatever manner may be appropriate' in the judge's view of the case and to choose from among the provisions of Section 706." *Hackley v. Roudebush,* 171 U.S.App. D.C. 376, 520 F.2d 108, 119 (1975) (quoting from the opinion of the District Court in that case).

however, as to whether in such a suit the relevant language permits a court to award attorneys' fees for work performed in connection with the administrative proceedings—proceedings that, as explained above, are a statutory prerequisite to filing a lawsuit alleging employment discrimination by the federal government.

Our analysis leads us to reject the limitation suggested by appellant and to conclude that in a Title VII suit, brought by a federal employee, attorneys' fees awarded under Section 706(k) may include compensation for work done at both judicial and administrative levels. In so holding our decision is consistent with the majority of cases [13] in which the question has been considered.[14]

**13.** *See Johnson v. United States*, D.Md., Civil Action No. H–74–1343 (June 8, 1976), aff'd, 554 F.2d 632 (4th Cir. 1977); *Smith v. Kleindienst*, 8 F.E.P. 752 (D.D.C.), aff'd, sub nom. *Smith v. Levi*, 174 U.S.App.D.C. 70, 527 F.2d 853 (1975) (decision without opinion); *McMullen v. Warner*, 416 F.Supp. 1163 (D.D.C.1976); *Reyes v. Mathews*, 428 F.Supp. 300 (D.D.C.1976); *Hammond v. Balzano*, 10 E.P.D. ¶ 10333 (D.D.C. 1975).

In *Foster v. Mumford*, 11 E.P.D. ¶ 10803 (D.D.C.1976), *sub nom. on appeal Foster v. Boorstin*, 182 U.S.App.D.C. ——, 561 F.2d 340 the District Court—following the decision in *Mello v. Secretary of Health, Education and Welfare*, 8 E.P.D. ¶ 9620 (D. D. C.1974)—refused to award attorneys' fees at all because the plaintiff was said not to be a "prevailing party" within the language of § 706(k), 42 U.S.C. § 2000e–5(k). In a separate opinion issued today, we reverse and remand that case and, to the extent *Mello* is inconsistent with our decision in *Foster*, we overrule it. In the recent case of *Walden v. Boorstin*, D.D.C. Civil Action No. 76–0297 (Oct. 20, 1976), defendant's appeal dismissed pursuant to his motion April 4, 1977, Judge Gesell noted that "[w]hile attorney's fees for time spent handling an administrative hearing cannot be included, this does not bar the claim here. Counsel have a responsibility to ascertain the administrative position of a controversy before bringing it to court and limited reasonable administrative contacts immediately prior to suit will be recognized. That is the situation here." Slip op. at 1. Recovery of all of plaintiff's non-"excessive" hours of legal representation prior to the suit and eventual settlement was then permitted. To the extent that the holding or dicta in *Walden* are inconsistent with our decisions in either the instant case or *Foster*, they too are overruled.

**14.** The Government mentions in passing that it has not discovered a private sector Title VII

## III.  THE STATUTORY LANGUAGE

We begin our analysis with the language of the statute itself. Consideration of the operative language demonstrates clearly that appellant's narrow interpretation requires a strained and unnatural construction.

■ Section 706(k) grants federal District Courts discretion to award reasonable attorneys' fees and costs to the prevailing party "[i]n any action or proceeding under this subchapter [*i. e.,* Title VII] * * *." Both prepositional phrases—"in any action or proceeding" and "under this subchapter" —suggest that Congress did not intend to limit awards of fees and costs to services

case which holds that compensation for legal services performed in connection with EEOC proceedings—the administrative aspect of Title VII's enforcement scheme for private employment—is a fee that may be awarded under § 706(k), 42 U.S.C. § 2000e–5(k). Appellant's br. at 12 n.12. *But see Williams v. General Foods Corp.,* 492 F.2d 399, 409 (7th Cir. 1974) (court seemed to assume attorneys' fees could be awarded for services rendered in EEOC proceedings). However, the Government also has not cited any private sector Title VII case which holds that such compensation may not be awarded. The truth of the matter is that the issue apparently has not been decided. In view of EEOC's nature and functions, this is not surprising. When EEOC receives an employment discrimination complaint from an employee it investigates and, when it concludes that there is reasonable cause to believe the alleged discrimination has been committed, attempts to promote conciliation between employer and employee. Section 706(b), 42 U.S.C. § 2000e–5(b) (Supp. V 1975); 29 C.F.R. §§ 1601.5 to 1601.26 (1976). EEOC has no power to award remedial relief or issue cease and desist orders, although, since 1972, it has been authorized to bring civil actions in District Court. 42 U.S.C. § 2000e–5(f)(1) (Supp. V 1975). Thus EEOC's procedures and authority usually make it unnecessary for an employee to use an attorney's services. In this way the method of recourse for the private sector employee who has been discriminated against is much different from that of the federal employee. The latter must proceed through administrative channels, generally involving an investigation and a formal hearing, within her agency. As described *infra*, an attorney's assistance can be of considerable importance in such proceedings, particularly at a hearing.

performed after filing of the judicial complaint, since this subchapter requires an agency proceeding before court action.[15]

Appellant nevertheless contends that the reference to "action or proceeding" is a reference simply to a civil action brought in federal court. Ignoring the disjunctive link between the two words and the familiar principle that statutory language should be construed so as to avoid redundancy,[16] appellant argues that, in Section 706(k) as incorporated by Section 717(d), 42 U.S.C. § 2000e–16(d), "action"

and "proceeding" each refer to a suit in federal court. However, as one court has held in considering the same question, "Had Congress wished to restrict an award of an attorney's fee to only suits filed in court, there would have been no need to add the words 'or proceeding' to 'any action.' But 'proceeding' is a broader term than 'action' and would include an administrative as well as judicial proceeding." *Johnson v. United States*, D.Md. Civil Action No. H–74–1343 (June 8, 1976), slip op. at 7, *aff'd*, 554 F.2d 632 (4th Cir. 1977).

**15.** Appellant correctly notes that the established "American rule" is that, absent an enforceable contract, litigants in federal court must pay their own attorneys' fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 250, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (collecting cases). In *Alyeska* the Supreme Court noted that this rule is subject to three exceptions. One such exception is "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." 421 U.S. at 257, 95 S.Ct. at 1621. Also, a court "may assess attorneys' fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant, * * *' or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . .'" *Id.* at 258–259, 95 S.Ct. at 1622. Third, and the only exception relevant here, a court may award attorneys' fees where authorized by statute. *Id.* at 269, 95 S.Ct. 1612.

Appellant also asserts that, with respect to the federal government, the "American rule" is reinforced by 28 U.S.C. § 2412 (1970), which waives sovereign immunity as to certain litigation costs but does not allow recovery of attorneys' fees against the federal government unless they are specifically provided for in another statute. *Cuneo v. Rumsfeld*, 180 U.S.App. D.C. 184, 553 F.2d 1360, 1363 (1977). Thus this court has said that § 2412 codifies "the principle of sovereign immunity [which] precludes the award of costs and fees against the United States 'in the absence of a statute directly authorizing it . . .'" *Natural Resources Defense Council, Inc. v. EPA*, 168 U.S. App.D.C. 111, 512 F.2d 1351, 1353 (1975). Obviously, therefore, a statute cannot be said to authorize award of attorneys' fees against the United States unless it constitutes a waiver of sovereign immunity. Such a "waiver of the traditional sovereign immunity," the Supreme Court has recently said, " 'cannot be implied

but must be unequivocally expressed.' " *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), *quoting United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

All of this is, of course, well established and, by now, even commonplace. None of it, however, bears on the precise question at hand. Quite simply, Title VII is, without doubt, a statute that expressly provides for recovery of attorneys' fees and that specifically waives sovereign immunity. *See Koger v. Ball*, 497 F.2d 702, 708 n.33 (4th Cir. 1974); *Womack v. Lynn*, 164 U.S.App.D.C. 198, 504 F.2d 267, 269 (1974). From its enactment § 706(k), 42 U.S.C. § 2000e–5(k), has always permitted recovery of attorneys' fees from the federal government "the same as a private person." *See United States Steel Corp. v. United States*, 519 F.2d 359, 361–362 (3d Cir. 1975); *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131 (9th Cir. 1974). *Cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 457, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (award of attorneys' fees and back pay against state government employers pursuant to Title VII does not violate the Eleventh Amendment since that Amendment is limited by § 5 of the Fourteenth Amendment). Accordingly, the question is not whether § 706(k) authorizes attorneys' fees and waives sovereign immunity—it plainly does—but, rather, how the specific language of the attorney fee provision should be interpreted. In seeking the proper interpretation this court necessarily turns to generally applicable principles of statutory construction. *See, e. g., Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 222, 65 S.Ct. 639, 89 L.Ed. 901 (1945); 3 A. Sutherland, Statutes and Statutory Construction § 72.02 (4th ed., Sands, ed. 1974).

**16.** *Rockbridge v. Lincoln*, 449 F.2d 567, 571 (9th Cir. 1971); *United States v. Blasius*, 397 F.2d 203, 206 (2d Cir.), *cert. granted*, 393 U.S. 950, 89 S.Ct. 375, 21 L.Ed.2d 361 (1968), *dismissed*, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969).

In an effort to bolster his argument that neither "action" nor "proceeding" refers to administrative proceedings, appellant cites selectively to other provisions in Title VII where the word "proceeding(s)" is used.[17] In particular, appellant asserts that "proceeding" in Section 706(k) refers to enforcement proceedings which Section 706(i), 42

U.S.C. § 2000e-5(i) (Supp. V 1975), authorizes the Equal Employment Opportunity Commission (EEOC) to institute in District Court. That subsection provides that "[i]n any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section [Section

17. Appellant also seeks support from several cases in which, pursuant to statutory language wholly distinguishable from that of § 706(k), 42 U.S.C. § 2000e-5 (1970), attorneys' fees were not awarded for services in administrative proceedings. He relies most heavily on *Meeker & Co. v. Lehigh Valley R. Co.*, 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), followed in *Mills v. Lehigh Valley R. Co.*, 238 U.S. 473, 482, 35 S.Ct. 888, 59 L.Ed. 1414 (1915). In *Meeker* the plaintiff had brought an enforcement suit in District Court under § 16(2) of the Interstate Commerce Act. *See* Act of February 4, 1887, c. 104, 24 Stat. 379, and amendments of March 2, 1889, c. 382, 25 Stat. 855; February 10, 1891, c. 128, 26 Stat. 743; February 8, 1895, c. 61, 28 Stat. 643; June 29, 1906, c. 3591, 34 Stat. 584; and June 30, 1906, 34 Stat. 838, Joint Resolution No. 47. Amended and codified at 49 U.S.C. §§ 1 to 27 (1970 & Supp. V 1975). Under §§ 8 and 16(2) of that Act, *see* 49 U.S.C. §§ 8, 16(2) (1970), the Supreme Court affirmed an award of attorneys' fees to the extent it covered services rendered in connection with the enforcement suit in District Court but disallowed that part of the award which covered services rendered in the prior reparation proceedings conducted before the Interstate Commerce Commission. In the language of the Supreme Court, quoting the statute, § 8 provided "that a carrier violating the act shall be liable to any person injured for the damages he sustains, 'together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.'" 236 U.S. at 432, 35 S.Ct. at 336. Section 16(2) of the Act, the Court noted, related "to actions to enforce claims for damages after the Commission has acted thereon," and it provided that "[i]f the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as part of the costs of the suit." *Id.*

The Court's holding in *Meeker* rested firmly on its interpretation of these two sections. Each section uses language significantly different from the language of § 706(k), 42 U.S.C. § 2000e-5(k), which we are asked to construe. Section 8 of the Interstate Commerce Act permits the injured party to file suit to recover damages and a reasonable attorney's fee "to be taxed and collected as part of the costs [of] the *case*." (Emphasis added.) Section 16(2) authorizes the prevailing party in an ICC action

to recover a reasonable attorney's fee, "to be taxed and collected as a part of the costs of the *suit*." (Emphasis added.) Section 706(k), however, provides that in "*any action or proceeding*" the prevailing party may receive "a reasonable attorney's fee as part of the costs * * *." (Emphasis added.)

Appellant observes, however, that § 706(k) allows for attorneys' fees to be taxed as part of the "costs," and that allowable litigation expenses for which the Government is liable as costs are provided for in 28 U.S.C. § 1920 (1970). According to appellant, the items listed in that statute, *e. g.*, marshal and docket fees, pertain only to expenses incurred in the District Court and, since 28 U.S.C. § 2412 (1970) only waives sovereign immunity for the expenses enumerated in § 1920, the costs incurred by a Title VII federal employee complainant at the administrative level are not recoverable. On this point we note only that the suggested construction does such violence to the plain language of § 706(k) that it lacks all plausibility.

Appellant also relies on *Hays Livestock Commission Co. v. Maly Livestock Commission Co.*, 498 F.2d 925 (10th Cir. 1974), a case interpreting the attorney fee provision of the Packers and Stockyards Act, 7 U.S.C. § 210(f) (1970). Because the statute parallels that construed in *Meeker* and because the court expressly followed *Meeker's* rationale—which, as discussed *supra*, is distinguishable—this case also offers no support for appellant's position.

Lastly, appellant refers the court to its decision in *Turner v. FCC*, 169 U.S.App.D.C. 113, 514 F.2d 1354 (1975). In *Turner* we affirmed the FCC's denial of the petitioner's request for attorneys' fees pursuant to 47 U.S.C. § 206 (1970). That section permits recovery of attorneys' fees "as part of the costs in the *case*." (Emphasis added.) This language, like that in question in *Meeker*, stands in contrast to the more encompassing "action or proceeding" terminology of Title VII. Furthermore, the petitioner in *Turner* had requested the FCC to order a private party to pay petitioner's attorneys' fees covering services rendered at the administrative level. This is quite different from appellee's request in the instant case for the District Court to require a government agency to pay attorneys' fees.

706, 42 U.S.C. § 2000e–5], the [EEOC] may commence proceedings to compel compliance with such order." [18]  Also, appellant notes that the District Court suit authorized by this subsection is characterized as a "proceeding" by Section 706(j), 42 U.S.C. § 2000e–5(j) (Supp. V 1975).

█ Appellant's argument, however, is wide of the mark. Neither appellee nor this court assumes that the term "proceeding(s)" as used in Title VII can never refer to a court suit. Quite the contrary, echoing *Johnson v. United States, supra*, we believe that "proceeding" is broad enough to be properly construed to refer to either judicial or administrative proceedings. This view is borne out by other uses of the term in the Section 706, 42 U.S.C. § 2000e–5, enforcement structure where it is clear beyond any doubt that Congress was referring to administrative proceedings. Section 706(b), 42 U.S.C. § 2000e–5(b) (Supp. V 1975), discusses "findings and orders made by State or local authorities in *proceedings* commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section." (Emphasis added.) Section 706(c), 42 U.S.C. § 2000e–5(c) (Supp. V 1975), which requires that in private sector charges of employment discrimination EEOC defer, for at least a 60-day period, to the operation of applicable state or local law, refers repeatedly to "proceedings":

> If any requirement for the commencement of such *proceedings* is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the *proceeding* is based, the *proceeding* shall be deemed to have been commenced * * * at the time such statement is sent by registered mail to the appropriate State or local authority.

(Emphasis added.) *See also* Section 706(e), 42 U.S.C. § 2000e–5(e) (Supp. V 1975). Since the required deferral is only for 60 days, Congress hardly could be presumed to have intended to defer only to state or local judicial proceedings. Rather, it was clearly administrative proceedings to which Congress referred, *see Love v. Pullman*, 404 U.S. 522, 524–526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), and, in fact, many states have by now established, as Congress envisioned, administrative proceedings to handle claims of employment discrimination. Even appellant does not deny that, in these provisions, Congress was referring to administrative proceedings.

Furthermore, we find particularly instructive a comparison of the language of the attorney fee provision of Title VII, Section 706(k), 42 U.S.C. § 2000e–5(k), with that of the attorney fee provision of Title II, Section 204(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b) (1970). The provisions were enacted contemporaneously in 1964 as part of the Act. The language of the two subsections is identical except that, where Section 706(k) refers to "any action or proceeding under this subchapter," Section 204(b) refers simply to "*any action commenced pursuant to this subchapter.*" (Emphasis added.) This material difference is understandable only in light of the fact that the enforcement scheme of Title II is solely judicial, *see Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), while the enforcement scheme of Title VII is both administrative and judicial.[19]  *Cf. Lea v. Cone Mills Corp.*, 438 F.2d 86, 90–91 (4th Cir. 1971) (Boreman, J., concurring in part and dissenting in part). The inclusion in Sec-

---

**18.** In the 1972 amendments to Title VII the only change made in § 706(i) was substitution of the words "this section" for "subsection (e) of this section." Pub.L. No. 92–261, § 4(b)(1), 86 Stat. 107. No importance is ascribed to this technical, perfecting modification. The language quoted is that of § 706(i), 42 U.S.C. § 2000e–5(i), as it now reads.

**19.** *Compare Northcross v. Memphis Board of Education*, 412 U.S. 427, 428, 93 S.Ct. 2201,

2202, 37 L.Ed.2d 48 (1973) (construing similar provision in the Emergency School Aid Act of 1972, 20 U.S.C. § 1617 (Supp. V 1975)) ("The similarity of language * * * is, of course, a strong indication that the two statutes should be interpreted *pari passu.*"); *Torres v. Sachs*, 538 F.2d 10 (2d Cir. 1976) (construing similar provision in the 1975 extension of the Voting Rights Act of 1965, 42 U.S.C. § 1973–*l*(e)).

tion 706(k) of the reference to "proceeding" —in addition to "action"—appears to be a clear manifestation of Congress' intent that the attorney fee provision should apply to both aspects of the Title VII enforcement scheme. Admittedly, Titles II and VII differ in that "[w]hen a plaintiff brings an action under [Title II], he cannot recover damages," *Newman v. Piggie Park Enterprises, supra,* 390 U.S. at 402, 88 S.Ct. at 966, while a plaintiff can, *inter alia,* recover damages under Title VII.[20] But the *Piggie Park* rationale has been found applicable to Title VII cases as well. *See, e. g., Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177, 189 (1974); *Lea v. Cone Mills Corp., supra,* 438 F.2d at 88;[21] Nussbaum, *Attorney's Fees in Public Interest Litigation,* 48 N.Y.U.L.Rev. 301, 321–322 (1973) (collecting cases). Moreover, the purposes of the counsel fee provision in the two Titles are, in important respects, parallel.[22]

In short, we decline to join appellant in straining to construe the word "proceeding" in as narrow and technical sense as possible so as to make it superfluous and the phrase "action or proceeding" a redundancy.[23] This was also the conclusion reached in *McMullen v. Warner,* 416 F.Supp. 1163 (D. D.C.1976), a Title VII federal employment discrimination case, where Judge Sirica awarded attorneys' fees to an employee of the United States Navy "for the administrative portion of this case as well as for the judicial portion." Judge Sirica stated:

> The government argues that the phrase "any action or proceeding" does not include administrative proceedings. But the words themselves certainly do not suggest that Congress intended such a distinction. Nor, in this Court's view, does the section's purpose. That purpose, so far as injured plaintiffs are concerned, is to remove from them the burden of having to pay the costs of attorneys, and thus to remove a deterrent to seeking legal redress. *Cf. Lea v. Cone Mills Corp.,* 438 F.2d 86 (4th Cir. 1971). *See Newman v. Piggie Park Enterprises,* 390 U.S. 400, [88 S.Ct. 964, 19 L.Ed.2d 1263] (1968).

416 F.Supp. at 1167.

That "any action or proceeding" should be construed in its broader rather than in its narrower sense is made even more obvious by the fact that that phrase is followed by the phrase "under this subchapter [*i. e.,* Title VII]." To interpret the language "any action or proceeding under [Title VII]" as excluding the administrative proceedings that constitute such a central part of Title VII is to ignore not only the statutory language itself but also the authoritative judicial construction that it has received. In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974), the Supreme Court plainly stated:

> [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.,* Congress indicated that it considered the policy against discrimination to be of the "highest priority." *Newman v. Piggie Park Enterprises, supra,* 390 U.S. at 402 [88 S.Ct. [964] at 966]. Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. See 42 U.S.C. § 2000e–5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e–5(c) (1970 ed., Supp. II) (state and local agencies); 42 U.S.C. § 2000e–5(f) (1970 ed., Supp. II) (federal courts). * * *

(Footnote omitted.) The 1972 amendments to the Act, extending its applicability to

---

20. *Clark v. American Marine Corp.,* 320 F.Supp. 709, 710–711 (E.D.La.1970).

21. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), as well as the lower court opinions that are cited, involved award of wide-ranging injunctions against future discrimination rather than, as here, specific relief for a single plaintiff. This distinction, however, by no means diminishes the justification for award of attorneys' fees in this case. *See* Part IV *infra.*

22. *See* Part IV *infra.*

23. *See* cases cited in note 16 *supra.*

federal employees, were no less clear as to the interrelatedness of administrative and judicial proceedings. This was stressed in numerous statements by the Supreme Court in its recent opinion in *Brown v. GSA, supra,* which described the nature of the enforcement scheme of which the attorney fee provision is a part. The Court stated:

Section 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 86 Stat. 111, 42 U.S.C. § 2000e–16 (1970 ed., Supp. IV), proscribes federal employment discrimination and establishes an *administrative and judicial enforcement system.* * * *

* * * * * *

Section 717(b) and (c) establish *complementary administrative and judicial enforcement mechanisms* designed to eradicate federal employment discrimination. * * *

* * * * * *

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain [administrative] preconditions. * * *

* * * * * *

The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for *a careful blend of administrative and judicial* enforcement powers. * * *

425 U.S. at 829–833, 96 S.Ct. at 1966 (emphasis added; footnotes omitted). *See also Grubbs v. Butz,* 169 U.S.App.D.C. 82, 514 F.2d 1323, 1329 (1975); *Hackley v. Roudebush, supra,* 520 F.2d at 156–159. The expansive reference to "any action or proceeding under [Title VII]" was plainly intended

to refer to this blend of administrative and judicial powers and not simply to one segment of it.

The instant case, in fact, is representative of the operation of the integrated enforcement scheme created by Congress. Because of the structure of Title VII enforcement procedures, the administrative and judicial proceedings in this case, as in *Johnson v. United States, supra,* "were part and parcel of the same litigation for which an attorney's fee is now sought." 554 F.2d at 633.

In *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), the Supreme Court rejected the Government's argument that federal employees do not have a right to trial *de novo* subsequent to Title VII administrative proceedings. The Court noted:

" '[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.' "
* * *

425 U.S. at 848, 96 S.Ct. at 1953, *quoting Lynch v. Alworth-Stephens Co.,* 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660 (1925). Mindful of the Court's admonition, we reject the Government's attempt to strain the statutory language so as to curtail a prevailing federal employee's Title VII right to an award of attorneys' fees just as the Supreme Court in *Chandler* rejected the Government's analogous attempt to curtail a federal employee's Title VII right to a trial *de novo.*

## IV. THE PURPOSES OF TITLE VII

We find, therefore, that both the plain language of the statute itself and the case law in which that language has been applied support the District Court's decision. In addition, we are compelled to note that adoption of the position urged by appellant would seriously impinge on effective implementation of Title VII's established purposes.[24]

24. In this case, as we have noted, appellee had to file an action in the District Court before she

was accorded a just remedy for the employment discrimination she had suffered. It was

■ In *Newman v. Piggie Park Enterprises, supra,* the Supreme Court construed Title II's attorney fee provision which, as already discussed, is slightly narrower but otherwise identical to that of Title VII. In ruling that the congressional policy of encouraging private enforcement of civil rights legislation required a construction favoring wide availability of attorneys' fees, the Court stated:

> When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. \* \* \*

390 U.S. at 401, 88 S.Ct. at 966 (footnote omitted). Relatedly, the Court also noted that "Congress \* \* \* enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II." *Id.* at 402, 88 S.Ct. at 966.[25] Similarly, the attorney fee provision of Title VII has the broad purpose of abetting enforcement of that Title by encouraging individuals injured by racial discrimination

to seek the relief made available thereunder—relief for which administrative proceedings are essential.

Specifically, *Piggie Park* held that, notwithstanding the statutory language that the District Court, "in its discretion," may allow the prevailing party fees and costs, the purpose of encouraging private enforcement dictated that "one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." 390 U.S. at 402, 88 S.Ct. at 966. *Piggie Park* was explicitly cited with approval in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the leading decision as to when attorneys' fees may be awarded.

Courts construing the fees and costs provisions of Title VII have adopted the *Piggie Park* rationale that statutes authorizing award of attorneys' fees as part of private enforcement schemes in the Civil Rights Act should be broadly interpreted. In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 716 (5th Cir. 1974), the court said with respect to Section 706(k): "This

---

the District Court, therefore, that made the attorneys' fees award which is the subject of this appeal. Appellant argues that affirming the holding that a District Court may award attorneys' fees for services at the administrative and judicial levels will have the anomalous result that a Title VII plaintiff who is unsuccessful in the administrative proceedings but succeeds in court will be able to recoup attorneys' fees for all legal services rendered, while a plaintiff who is successful at the administrative level will not be able to recoup any attorneys' fees.

Our holding today is, of course, limited to the particular facts of this case. This court need not and does not, therefore, decide whether the anomaly predicted by appellant will in fact result. We do point out, however, that appellee has suggested two possible ways in which a plaintiff successful in administrative proceedings might obtain attorneys' fees for services rendered in those proceedings. The first possibility is to allow the plaintiff to come to court on the single issue of whether, and in what amount, attorneys' fees are to be awarded. The second is for the agency itself to award fees pursuant to its authority under § 717(b), 42 U.S.C. § 2000e–16(b), to "enforce the provi-

sions [prohibiting employment discrimination] *through appropriate remedies,* including reinstatement or hiring of employees with or without back pay, *as will effectuate the policies of this section* \* \* \*" (emphasis added).

We stress that we wish to intimate no views as to the merits of either of appellee's suggestions. They are mentioned only to show that it would be premature to conclude that our decision will have the consequences feared by appellant.

**25.** The Supreme Court noted in *Newman v. Piggie Park Enterprises, supra* note 21:

> If Congress' objective had been to authorize the assessment of attorneys' fees against defendants who make completely groundless contentions for purposes of delay, no new statutory provision would have been necessary, for it has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 Moore's Federal Practice 1352 (1966 ed.).

390 U.S. at 402 n.4, 88 S.Ct. at 966.

Court, as part of its obligation 'to make sure that Title VII works,' has liberally applied the attorney's fee provision of Title VII, recognizing the importance of private enforcement of civil rights legislation." (Footnote omitted.) This court adopted the liberal construction of Section 706(k), as enunciated in *Johnson*, in *Evans v. Sheraton Park Hotel, supra*, 503 F.2d at 187–189. Furthermore, failure to award attorneys' fees to a prevailing party in a Title VII action has been held an abuse of the District Court's discretion. *Lea v. Cone Mills Corp., supra*, 438 F.2d at 88.

The policy favoring private enforcement of Title VII is arguably even more compelling when a federal agency or official is the defendant. Unlike private sector employees, federal employee complainants are not merely private attorneys general; they are the only attorneys general under the enforcement scheme adopted in Section 717, 42 U.S.C. § 2000e–16 (Supp. V 1975). Suits in behalf of federal employees by the Attorney General or EEOC are not authorized against federal agencies. Indeed, the Attorney General is frequently counsel for the other side.[26] Also unlike private sector employees, federal employees must first bring their employment discrimination grievances, not to an independent state or local administrative body[27] or to EEOC, but to the very agency about whose practices they are complaining. *Id.*[28] Partly for these reasons, no doubt, courts consistently have awarded attorneys' fees to prevailing plaintiffs in employment discrimination cases in which a federal agency is the defendant.

*E. g., McMullen v. Warner, supra; Johnson v. United States, supra; Smith v. Kleindienst*, 8 F.E.P. 752 (D.D.C.), *aff'd, sub nom. Smith v. Levi*, 174 U.S.App.D.C. 70, 527 F.2d 853 (1975) (decision without opinion); *Reynolds v. Wise*, 375 F.Supp. 145 (N.D. Tex.1974).

Appellant insists, however, that in awarding attorneys' fees a distinction should be made between administrative and judicial enforcement of Title VII. Appellant's entire argument clashes sharply with the clearly perceived structure and aims of the Title. From the passage of the Civil Rights Act of 1964, the Title VII enforcement scheme has included both administrative proceedings and judicial actions. In a passage already quoted[29] from *Alexander v. Gardner-Denver Co., supra*, 415 U.S. at 47, 94 S.Ct. 1011, the Supreme Court emphasized the interrelatedness of Title VII's administrative and judicial enforcement scheme in the private sector. And in numerous passages quoted[30] from *Brown v. GSA, supra*, the Court stressed that Title VII's administrative and judicial enforcement scheme for federal employees was at least as interrelated.

Essentially, appellant's position on whether attorneys' fees for representation at the administrative level are necessary to effectuate Title VII policy is an internally inconsistent attempt to have it both ways. On the one hand, appellant argues that payment of attorneys' fees relates only to a fringe benefit, not to a substantive or procedural defect of the administrative fact-finding process that would prevent equita-

---

**26.** This distinction is not attenuated by the fact that in this case we are considering an award of attorneys' fees for the administrative aspect of Title VII litigation. Title VII's "careful blend of administrative and judicial enforcement powers," *Brown v. GSA*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), is such that effective utilization of the administrative proceedings can considerably ease a plaintiff's path in any subsequent judicial proceeding while, conversely, ineffectiveness at the administrative level can make success at the judicial level more difficult. Parties to a Title VII suit may, for example, submit the record of their administrative proceedings to the District Court as evidence. *See* note 33 *infra*.

**27.** *See* text at p. 327 *supra*.

**28.** As was observed in *Chandler v. Roudebush, supra* note 12, 425 U.S. at 863 n.39, 96 S.Ct. 1949, Congress was understandably concerned over the inherent conflict of interest involved when the agency accused of discrimination is responsible for processing and ruling on the claim.

**29.** *See* text at p. 328 *supra*.

**30.** *See* text at p. 329 *supra*.

ble resolution of an employee grievance. Moreover, appellant asserts, administrative proceedings in a federal sector Title VII case are non-adversarial. On the other hand, appellant also contends that while the governing regulations give an employee the right to be accompanied, represented, and counseled by a representative of his own choosing at every stage of the proceedings, *see* 5 C.F.R. § 713.214(b) (1977), paid counsel is unnecessary at this time since employees often have available the services of an attorney without charge.[31]

Appellant thus seems uncertain whether he wants to argue that for services at the administrative level (1) attorneys' fees are unnecessary because attorneys are unnecessary, or (2) attorneys' fees are unnecessary because, although attorneys are necessary, compensation is not. In any event, we can accept neither argument.

■ To support his contention that an employee in federal sector Title VII administrative proceedings does not need a lawyer, appellant cites the Discrimination Complaints Examiners Handbook (1973), published by the Office of Federal Equal Employment Opportunity. In fact, however, the contents of the Handbook could more accurately be cited for just the opposite proposition. The Handbook offers the self-description that it "sets forth the basic ground rules which will enable the Examiner to conduct a fair and impartial hearing and render a just decision in discrimination complaint cases." *Id.*, Foreword. In outlining the nature of such a hearing the Handbook sketches a process in which, though not indispensable, lawyers would clearly be of assistance to a lay person. For example, the Handbook makes provision for continuances and describes the grounds for granting or denying them (*id.* at 20–21),

provides for receipt of stipulations (*id.* at 38), speaks to "relevancy," "materiality," and "repetitiousness" as matters of concern when ruling on admissibility (*id.* at 47–48), and entitles the parties to participate in drafting written interrogatories (*id.* at 29). The Handbook, and federal regulations, make clear that in a Title VII administrative hearing the employee is expected to put evidence into the record, offer proof, argue against exclusion of evidence, agree on stipulations, and examine and cross-examine witnesses. *See* 5 C.F.R. Part 713 (1977). Settlement of the charge is possible at any stage of the proceedings and agreements may, accordingly, have to be negotiated and rights may be waived.

Furthermore, the agency's representative is likely to be a lawyer, which can only serve to exacerbate a non-lawyer plaintiff's disadvantage. Any realistic assessment of Title VII administrative proceedings requires the conclusion that—despite the fact they are not strictly adversarial—an employee would often be ill-advised to embark thereon without legal assistance. Indeed, the services a lawyer may be called upon to perform at the administrative level are well illustrated by the instant litigation. Appellee's counsel has attested that in the course of the administrative proceedings she drafted two administrative complaints and a lengthy affidavit, compiled exhibits, interviewed witnesses, responded to inquiries from the agency investigator, conducted legal research at the request of the agency equal employment opportunity officer, and negotiated a settlement of all charges. Affidavit of Linda P. Singer, JA 20–21.

Turning to appellant's contention that free legal services are available to federal employees in Title VII administrative com-

---

**31.** Appellant then goes on to list the possibilities for free legal services. The possibilities mentioned are: attorneys from the employee's own agency who, pursuant to Civil Service Commission regulations, are allowed a reasonable amount of time away from their official responsibilities for the purpose of representing an aggrieved employee without fee (5 C.F.R. § 713.214(b) (1977)); attorneys from certain agencies, such as the Department of Justice,

which operate an EEO Volunteer Representatives Program to assist employees in administrative proceedings; and the Employment Discrimination Complaint Service of the District of Columbia Bar Association which refers federal employees to private and governmental lawyers who have agreed to provide free legal representation in discrimination cases. Appellant's br. at 28–29.

plaints we note initially that the factual accuracy of the point is disputed. Appellee has submitted an affidavit by the Program Director of the District of Columbia Bar Association Employment Discrimination Complaint Service which asserts that there is a shortage of both private and government attorneys who are "able to provide the time-consuming representation that is necessary for these government EEO cases, within the financial means of the complainants." Appellee's br., Attachment A, ¶ 11. We do not propose to resolve on appeal this factual dispute. We do observe, however, that appellant, in arguing that free legal services are available, relies in part on the availability of attorneys from the employee's own agency. Appellant's br. at 28. Without questioning in any way the competence or integrity of such attorneys, we find this an unsatisfactory alternative to allowing a plaintiff to choose his own counsel from outside his particular agency. A plaintiff who is asked to rely on an attorney from within the very agency about whose practices he is complaining may lack faith in the objectivity of the proceeding. We fear that the absence of independent counsel could only compound the conflict of interest that might be perceived to exist when the agency accused of discrimination must process and rule on the claim.[32]

In addition to being inconsistent with the recognized policies of Title VII, the distinction between attorneys' fees for services at the administrative and judicial levels is inconsistent with the realities of legal practice. For a conscientious lawyer representing a federal employee in a Title VII claim, work done at the administrative level is an integral part of the work necessary at the judicial level. Most obviously an attorney can investigate the facts of his case at a time when investigation will be most pro-

ductive. The attorney may thus gain the familiarity with the facts of the case that is so important in the fact-intensive area of employment discrimination. Perhaps even more important, the administrative proceedings allow the attorney to help make a record that can be introduced at any subsequent District Court trial.[33] Especially in an instance where development of a thorough administrative record results in an abbreviated but successful trial, refusing to award attorneys' fees for work at the administrative level would penalize the lawyer for his pre-trial effectiveness and his resultant conservation of judicial time. Simply to describe the operation of appellant's suggested distinction between attorneys' fees at the administrative and judicial levels is to emphasize its irrationality.

## VI.  CONCLUSION

We hold, in sum, that a federal District Court does have discretion, in a Title VII action where the federal employee is the prevailing party, to award attorneys' fees that include compensation for legal services performed prior to filing of the judicial complaint.

*Affirmed.*

## APPENDIX: LEGISLATIVE HISTORY

In order to set forth all the sources which the parties invoke to support their conflicting positions, we append this discussion of the legislative history of Title VII's attorney fee provision.

Both parties rely on various aspects of the legislative materials. In fact, however, although certain isolated remarks lend support to appellant's position, pertinent legislative history considered as a whole reinforces the statutory language and bears out the view that an award of attorneys' fees

---

**32.**  *See* note 28 *supra.*

**33.**  The Supreme Court pointed out in *Chandler v. Roudebush, supra* note 12:

Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial *de novo.* See Fed.Rule Evid. 803(8)(C). Cf. *Alexander v. Gardner-*

*Denver Co.,* 415 U.S. 36, 60 [94 S.Ct. [1011] at 1025, 39 L.Ed.2d [147] at 165] n.21. * * 425 U.S. at 863 n.39, 96 S.Ct. at 1961. *See also Hackley v. Roudebush, supra* note 12, 520 F.2d at 150–152, 156–159; *Reyes v. Mathews, supra* note 13, 428 F.Supp. 300.

under Title VII may include compensation for services at the administrative level.

This court reviewed the legislative history of the attorney fee provision in the recent case of *Grubbs v. Butz*, 179 U.S.App. D.C. 18, 548 F.2d 973 (1976). There the court held that the plaintiff, a federal employee, was not entitled to attorneys' fees for services in a substantially successful interlocutory appeal since success on an interlocutory appeal was not, without more, sufficient to make the plaintiff a "prevailing party" within the language of Section 706(k), 42 U.S.C. § 2000e–5(k) (1970). In the course of its discussion the court reviewed the prelude to the enactment, in 1964, of the provision in question:

> The statute, however, does not define "prevailing party." Scant attention was focused on the attorney's fee provision amid the sound and fury of the extended debates on the 1964 Civil Rights Act. No counsel fee provision was included in the version of Title VII reported out of the House Judiciary Committee, or that initially approved by the House of Representatives and submitted to the Senate. The provision first appeared in Title VII as part of a comprehensive amendment in the nature of a substitute, submitted by Senators Mansfield and Dirksen. That comprehensive amendment was approved by the Senate and later adopted in toto by the House.
>
> From the Senate debate on the Mansfield-Dirksen amendment, however, two purposes for § 706(k) emerge. First, Congress desired to "make it easier for a plaintiff of limited means to bring a meritorious suit," as Senator Humphrey stated in explaining the changes made by the amendment. Indeed, the attorneys' fee provision was an integral part of the Senate's effort to shift primary responsibility for enforcing Title VII from the EEOC to aggrieved individuals. But second, and equally important, Congress intended to "deter the bringing of lawsuits without foundation" by providing that the "prevailing party"—be it plaintiff or defendant—could obtain legal fees. * * *
>
> 548 F.2d at 975 (footnotes omitted).

Effectuation of each of these identified purposes would be hindered by adoption of the Government's position that an award of attorneys' fees may not include work done at the administrative level. Far from making it easier for a plaintiff of modest means to bring a meritorious suit, the Government's view of the limitation on the attorney fee provision would make it more difficult. Even when discrimination is patent, an employee might view his Title VII rights as not "worth" enforcing if he knew he would have to bear the cost of attorneys' fees for the administrative proceedings that are a necessary first step. Additionally, acceptance of the Government's argument might also thwart the second congressional purpose behind enactment of Title VII's attorney fee provision by encouraging rather than deterring needless lawsuits. That is, if the attorney fee provision were held not to authorize fees for work in administrative proceedings, then the complainant and his attorney might well decide that, at the administrative level, they could not afford to take the time necessary to develop complainant's case carefully and fully. Clearly, this would reduce the likelihood that claims could be resolved without resort to court. It would also mean that the administrative record, which can be admitted as evidence in court,[1] would tend to be less complete and thus less helpful in conserving judicial time in suits that are brought.

In 1972, as noted in the opinion for the court at 5, 561 F.2d at 322, Congress substantially amended Title VII by, among other things and most important for our purposes, extending its applicability to federal employment. In enacting these amendments Congress left unchanged the wording of the attorney fee provision. With the addition of Section 717(d), 42 U.S.C. § 2000e–16(d) (Supp. V 1975), the original attorney fee provision—along with other provisions from the 1964 Act and from the 1972 amendments thereto—was

---

1. *See* note 33 of the opinion for the court.

simply made applicable to federal employees. But even though Title VII's attorney fee provision was left unchanged by the amendments of 1972, the provision was the subject of some inconsistent and not particularly enlightening comments in the Senate floor debates, and in the House and Senate conference reports. Perhaps not surprisingly, appellant and appellee each rely on these Senate debates as favorable authority.

The first arguably relevant passage was a colloquy between Senator Dominick and Senator Javits.[2] Senator Dominick—referred to by Senator Williams as "[t]he principal architect of * * * changes dealing with the civil service area"[3]—had submitted an amendment (No. 611) to the pending Senate bill (S. 2525) that, *inter alia*, would have struck the provision that became Section 717(d), 42 U.S.C. § 2000e–16(d).[4] Senator Javits, in turn, introduced an amendment to strike that portion of the Dominick amendment. 118 Cong.Rec. 954 (1972). Senator Javits referred to the provisions that Section 717(d) eventually made applicable to federal employees and particularly focused on the question of attorneys' fees. He stated:

> If you refer to those provisions, insofar as they are applicable, you find that the main point is that where the complainant is suing in court, you have arrived at the stage of the proceeding where he has that remedy,[5] and in such circumstances as the court may deem just, the court may appoint an attorney for the complainant and authorize the commencement of the action without the payment of fees, costs, or security.
>
> Mr. President, that is a very important right for the individual, just as it is a very important right for a Government employee, for the individuals involved are not, in the main, high salaried, in that those who would be likely to sue in these equal employment opportunity cases are fairly modest people.
>
> So I see no reason, Mr. President, why in the one case, to wit, that of the normal complainant who is not a Government employee with a remedy in court, that complainant shall be the beneficiary of a court-appointed lawyer, and not have to pay these costs or securities, and why this provision should be stricken out when it comes to a Federal Government employee who has to sue and is also a person, because that is the generality of the cases, of modest means.
>
> So the motion which I make is to strike out the provision of the Dominick amendment which would withdraw that opportunity from a Government employee. I do not see how we can very well make that distinction.

118 Cong.Rec. at 954.

Two aspects of Senator Javits' statement are worth noting. The first is that his paramount concern was avoiding the anomaly—which would have resulted had the Dominick amendment been accepted—of private sector employees being able to avail themselves of the attorney fee provision while federal employees could not. The second is that Senator Javits appears to have assumed that the attorney fee provision, as it then read and still does read, had no applicability until an employee brought suit in federal court; *i. e.*, that the attorney fee provision was irrelevant to the administrative proceedings. This assumption was

---

2. The colloquy between Senators Dominick and Javits was discussed in *Hackley v. Roudebush*, 520 F.2d 108, 143 n.139 (1975).

3. 118 Cong.Rec. 505 (1972), *quoted in Chandler v. Roudebush,* 425 U.S. 840, 859 n.36, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). *See also Hackley v. Roudebush, supra* note 2, 520 F.2d at 129 n.81.

4. *See* 117 Cong.Rec. 39739–39740 (Nov. 8, 1971); Subcommittee on Labor, Senate Committee on Labor and Public Welfare, *Legislative History of the Equal Employment Opportunity Act of 1972*, 92d Cong., 2d Sess. 557, 408 (Comm. Print 1972).

5. Although the antecedent of the phrase "that remedy" is not entirely clear from Senator Javits' preceding remarks, it is obvious from the rest of the quoted passage that he was speaking of the attorney fee provision.

not, however, germane to the point that the Senator was making. If he had assumed that the attorney fee provision did apply to private sector employees' administrative (*i. e.* EEOC) proceedings, then he would certainly still have found objectionable the threatened disparity between private sector and federal employees.

Shortly after Senator Javits made the statement quoted above, Senator Dominick responded as follows:

> Mr. President, I want to say for the record that this particular amendment language was included, as the specific provisions of the bill deal only with Federal employees for whom we had a different procedure. They go through their own agencies and then they have the right as a Federal employee to go to the civil service board or to go through the Federal court system. The amendment to strike the language was included because the language to be struck was thought to be inappropriate to the specialized grievance procedures adopted in committee for Federal employees. A closer reading of sec. 706(g) through (w) [the provisions that would have been stricken by the proposed Dominick amendment] does indicate that language for providing attorney's fees and waiving court costs are applicable.
>
> Therefore, I have no objection to the Senator's amendment, and if he would want to withdraw his yea and nay request, that would be fine with me, and we can accept the amendment.

118 Cong.Rec. at 956. Senator Dominick thus made clear that he, too, wished to avoid the anomaly of allowing only private sector employees, and not federal employees, to recover attorneys' fees. The quoted passage also suggests, however, that Senator Dominick believed the attorney fee provision was applicable to administrative proceedings. He expressly referred to the "specialized grievance procedure * * * for Federal employees" and concluded that the "language for providing attorney's fees and waiving court costs are applicable." Because Senator Javits' amendment strik-ing the relevant part of Senator Dominick's amendment was adopted immediately after Senator Dominick's statement, no further elucidation was forthcoming.

A second exchange from the 1972 floor debates which bears at least tangentially on the issue *sub judice* is, unfortunately, also not wholly consistent. The focus of the exchange was another proposed amendment (No. 833), to the pending Senate bill (S. 2525) on Title VII. 118 Cong.Rec. at 1841. The amendment, which was introduced by Senator Gambrell, was discussed in the context of a continuing debate of the enforcement powers that EEOC should have. At the time of the particular discussion pertinent here the Senate envisioned granting the Equal Employment Opportunity Commission independent authority to issue cease and desist orders, requiring hearings before the EEOC, and providing for judicial review of cease and desist orders in federal Courts of Appeals with review based on the record developed during EEOC proceedings and not *de novo* orders. *See* S.Rep. No. 92–415, 92d Cong., 1st Sess. 17–22, 22–23, 37–41 (1971); S. 2515, 92d Cong., 1st Sess. § 4(a) (1971). Senator Gambrell's amendment would have expressly permitted EEOC to award attorneys' fees and, further, would have made reimbursement of fees by the Commission or a court mandatory for all respondent small business and labor organizations (as defined and only up to certain limits), regardless of whether they prevailed on the question of discrimination. In the course of his opening remarks on the amendment Senator Gambrell stated:

> Mr. President, the Civil Rights and Equal Employment Opportunity Acts themselves, which are being amended under the pending legislation, *already provide discretionary authority for the Commission to pay costs and attorney fees to a prevailing party in such a case.* In other words if I am proceeded against, and I win, the Commission can say, "We are sorry about the harassment we have caused, and we will pay your costs and attorney fees."

118 Cong.Rec. at 1841–1842 (emphasis added). Shortly thereafter Senator Gambrell stated:

> Under the present law, as I understand it, [when a small businessman agrees to a consent order against him], the Commission could not allow expenses and attorneys' fees, because the respondent in the case would not have been a prevailing party. This amendment says that so long as he has conducted his defense in a manner consistent with the purposes of the act itself, he can and in fact must be paid his expenses and attorneys' fees.

*Id.* at 1833. From these passages, it is obvious that Senator Gambrell believed that the pre-existing attorney fee provision permitted the Commission to award to the prevailing party attorneys' fees for services at the administrative level.

After Senator Gambrell had entertained certain questions from other senators concerning interpretation of his amendment, Senator Mondale proposed a substitute amendment. Senator Mondale explained what he saw as two central differences between his proposed substitute amendment and Senator Gambrell's amendment and, in so doing, expressed what also appears to have been a different opinion on the pre-existing law concerning award of attorneys' fees in connection with Title VII litigation. Senator Mondale stated:

> The underlying law, which is unchanged by the bill, provides that in any action or proceeding under this title, the court, in its discretion, may allow the prevailing party—other than the Commission or the United States—a reasonable attorney's fee as part of the cost; and the Commission and the United States shall be liable for the costs the same as a private person.
>
> The proposed substitute would liberalize that provision in two basic respects. First, it would add authority to award costs to the prevailing party with respect to the cost of a proceeding before the Commission. The underlying law to which I have referred does not permit the awarding of fees with respect to proceed-

ings before the Commission. So it liberalizes the fee awarding powers in that respect.

> Second, it makes awarding of such fees mandatory for small businesses and for unions, when they prevail before the Commission or before the court, rather than leaving it discretionary as it is now.

*Id.* at 1845. From this statement, it does seem that Senator Mondale's understanding of the pre-existing Title VII law on attorneys' fees was at variance with Senator Gambrell's, but a more complete characterization of Senator Mondale's views on the issue is difficult. In particular, it is difficult to discern from the passage quoted above whether Senator Mondale believed that neither the Commission nor a federal court could award attorneys' fees for administrative proceedings or, alternatively, only the Commission's authority was so limited. Although the passage quoted might seem to support the former interpretation, the context of the remarks lends some support to the latter.

In any event, neither Senator Gambrell nor Senator Mondale ever identified, much less discussed, their apparent disagreement on the question of attorneys' fees at the administrative level. Rather, Senator Mondale's substitute amendment was discussed briefly and adopted. 118 Cong.Rec. at 1847. As thus modified Senator Gambrell's amendment was then passed by the Senate. *Id.*

Ultimately, however, the Senate rejected that part of the legislation giving EEOC cease and desist authority and with it the requirement of hearings before EEOC. 118 Cong.Rec. at 3979–3980, 4944. The amended attorney fee provision remained in the bill as passed by the Senate but was deleted in conference. The respective conference reports, referring to this deletion, limited themselves to noting:

> The Senate amendment permitted payment of costs and counsel fees to small employers or labor organizations if they prevailed in actions brought against them by the Commission or the United States. An employer or union with 25 or fewer

employees or members would have been entitled to up to $5000, and an employer or labor organization with from 25 to 100 employees or members whose average income from such employment was less than $7500, would have been entitled to one-half the cost of its defense up to $2500. The House bill had no comparable provisions. The Senate receded. S.Rep. No. 92–681, 92d Cong., 2d Sess. 19 (1972); H.R.Rep. No. 92–899, 92d Cong., 2d Sess. 19 (1972). Again, it is difficult to perceive what Congress intended, *vis-á-vis* attorneys' fees for administrative proceedings, in acting as it did. No mention was made of the express authorization of awards of fees by EEOC which was included in Senator Gambrell's amendment.[6] It should be pointed out, however, that if, as the Government claims, such authorization represented a complete change in existing law, its deletion in conference would have merited at least some explanation.

More recently, Congress has provided further and clearer indication of the proper interpretation of the attorney fee provision. On October 19, 1976 the 94th Congress adopted "The Civil Rights Attorney's Fees Awards Act of 1976." Pub.L. No. 94–559, 90 Stat. 2641.[7] The Act allows award of attorneys' fees to the "prevailing party" in actions brought under seven specific sections of the United States Code: Sections 1981, 1982, 1983, 1985, 1986, and 2000d *et seq.* of Title 42, and Section 1681 *et seq.* of Title 20. *See* H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 (1976).[8]

The Act's catalyst is clear. As noted in the Senate report, "The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975), and to achieve consistency in our civil rights laws." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 1 (1976), U.S. Code Cong. & Admin.News 1976, p. 5909.[9]

In amending the specified civil rights statutes so as to make attorneys' fees available to prevailing parties in actions brought thereunder, Congress drew heavily on existing attorney fee provisions, particularly those of the 1964 Civil Rights Act. Describing the language of the bill that later became the Act, the House report stated that it "tracks the language of the counsel fee provisions of Titles II and VII of the Civil Rights Act of 1964, and Section 402 of the

---

6. Furthermore, we should point out—as has the Supreme Court—that "[i]n any event, unsuccessful attempts at legislation are not the best of guides to legislative intent." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 382 n.11, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

7. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That this Act may be cited as "The Civil Rights Attorney's Fees Awards Act of 1976".

   Sec. 2. That the Revised Statutes section 722 (42 U.S.C. 1988) is amended by adding the following: "In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs".

8. As the House report stated: "The affected sections of Title 42 generally prohibit denial of civil and constitutional rights in a variety of areas, while the referenced sections of Title 20 deal with discrimination on account of sex, blindness, or visual impairment in certain education programs and activities." H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 (1976). A more detailed description of the purposes and operation of these provisions is also included in the report. *Id.* at 4–5.

9. In *Alyeska* the Supreme Court held that under the "American rule" that attorneys' fees are not ordinarily recoverable by the prevailing litigant in federal litigation in the absence of statutory authorization, such fees could not be awarded under a "private attorney general" approach. 421 U.S. at 247, 261, 95 S.Ct. 1612. "Although the *Alyeska* case involved only environmental concerns, the decision barred attorney fee awards in a wide range of cases, including civil rights." H.R.Rep. No. 94–1558, *supra* note 8, at 2.

Voting Rights Act Amendments of 1975 [42 U.S.C. § 1973(e) (Section 402)]." H.R.Rep. No. 94–1558, *supra*, at 5 (footnotes omitted). The committee reports from both the House and the Senate analyzed the case law that had developed under various statutory attorney fee provisions, but concentrated on that of the Title II and Title VII provision whose language it adopted. H.R.Rep. No. 94–1558, *supra*, at 6–9; S.Rep. No. 94–1011, *supra*, at 3–6, U.S.Code Cong. & Admin. News 1976, p. 5908. In that analysis the House report expressly and approvingly cited the decision of the District Court in the instant case. H.R.Rep. No. 94–1558, *supra*, at 7.[10]

We acknowledge, of course, that legislative statements subsequent to passage of a given act do not deserve weight equal to that of statements made contemporaneously with passage. *Waterman Steamship Corp. v. United States*, 381 U.S. 252, 269, 85 S.Ct. 1389, 14 L.Ed.2d 370 (1965); *United States v. Price*, 361 U.S. 304, 312–313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960). Still, such statements are entitled to careful consideration "as a secondarily authoritative expression of expert opinion." *Bobsee Corp. v. United States*, 411 F.2d 231, 237 n.18 (5th Cir. 1969). *See also Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 379–381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1968) (legislation declaring intent of previous statute; citing cases); *Sioux Tribe of Indians v. United States*, 316 U.S. 317, 329, 62 S.Ct. 1095, 86 L.Ed. 1501 (1942); *Director, Office of Wkrs. Comp. Programs v. Boughman*, 178 U.S. App.D.C. 132, 138, 545 F.2d 210, 216 (1976); *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 343 (5th Cir. 1975).[11]

In sum, we are unpersuaded by the history of the pertinent legislation that the District Court's decision was erroneous. Rather, we find in such materials considerable evidence that the District Court's decision correctly implemented both the letter and the central spirit of Title VII.

ROBB, Circuit Judge, concurring:

I concur in the result, that the administrative phases of federal employment discrimination controversies, as distinguished from such cases in the private sector, are proceedings for which attorneys' fees are recoverable by the prevailing party.

---

10. The report observed:

    The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees. *Incarcerated Men of Allen County v. Fair*, 507 F.2d 281 (6th Cir. 1974); *Parker v. Matthews [sic]*, 411 F.Supp. 1059 (D.D.C.1976); *Aspira of New York, Inc., v. Board of Education of the City of New York*, 65 F.R.D. 541 (S.D.N.Y.1975). * * *

H.R.Rep. No. 94–1558, *supra* note 8, at 7.

    Although this passage does not cite the lower court decision for the precise point in question here, we doubt that the decision would have been cited despite disagreement with a major issue in the case, *i. e.*, whether attorney fees can be awarded for services rendered in the administrative proceedings—an issue which was obviously relevant to the subject of the report.

11. *See* 2A A. Sutherland, Statutes and Statutory Construction § 49.11 at 266 (4th ed., Sands, ed. 1973):

    Although comments about an earlier act in a legislative committee report on a subsequent bill are not part of the legislative history of the earlier act and therefore have less probative force than legislative history, they are entitled to consideration as an expert opinion concerning its proper interpretation. (Footnote omitted.) *See also Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 343 (5th Cir. 1975).