Ramchandra KULKARNI, Appellant,

v.

Clifford L. ALEXANDER, Jr., Secretary
of the Army, Appellee.

No. 77–1510.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 12, 1978.

Decided Sept. 29, 1978.

Patricia J. Barry, Washington, D. C., for
appellant.

Charles H. Anderton, Jr., Asst. U. S.
Atty., Washington, D. C., with whom Earl
J. Silbert, U. S. Atty., and John A. Terry
and Joseph Guerrieri, Jr., Asst. U. S. Attys.,
Washington, D. C., were on the brief, for
appellee.

Also John W. Polk, Asst. U. S. Atty.,
Washington, D. C., entered an appearance
for appellee.

Before McGOWAN and WILKEY, Circuit Judges, and DAVIS,* Judge, United States Court of Claims.

Opinion for the court filed by Judge DAVIS.

DAVIS, Judge:

This appeal by Dr. Ramchandra Kulkarni, a naturalized citizen born in India, brings before us certain aspects of his claim that he was discriminated against, on account of his national origin, in his employment by the Department of the Army as a civilian research chemist. The matter is somewhat complicated because appellant brought two successive discrimination suits in the District Court. Only the judgment in the second of these actions is now before us, but the proceedings and judgment in the first suit are directly pertinent to this appeal and we have to consider them in some detail.

Appellant began his service as a research chemist (grade GS–13) with the Army in August 1963 and continued to work at that level in what became known as the Biomedical Materials and Applications Branch, Biomaterials and Evaluation Division, United States Army Medical Bioengineering Research and Development Laboratory (stationed at various places in the 60's and 70's, but ending at Fort Detrick, Md.). After the head of the branch (Dr. Wade, a black male) was promoted to division head on December 2, 1973, a search was made for a successor to Wade as branch chief.[1] Appellant was among those considered, but the person selected (as of December 29, 1974) was a white man, Dr. Dillon.

Appellant complained to the Equal Employment Opportunity Counselor at Fort Detrick that his failure to be appointed branch chief was the latest action in a pattern of discrimination, based on his national origin, going back to the mid-1960's. The Counselor was unable to resolve the complaint and so informed appellant toward the end of January 1975. The latter then filed a formal discrimination complaint with his agency; this was considered by the United States Army Civilian Appellate Review Office which recommended a finding of no discrimination. This recommendation was accepted by the Commanding General of the United States Army Medical Research and Development Command—the relevant subdivision of the Army Department.

Appellant then exercised his right to have a hearing before a Civil Service Commission examiner. On December 23, 1975,[2] the examiner concluded that Dr. Kulkarni had been denied promotion to the grade of GS–14 and to the branch chief position because of discrimination based on national origin. He recommended, *inter alia*, that (1) appellant be promoted retroactively (with back pay) to GS–14, effective February 18, 1973, a two-year period prior to the date of his formal discrimination complaint;[3] and (2) appellant be retroactively assigned at grade GS–14, as chief of the branch as of December 3, 1973, the date that post became vacant because of Dr. Wade's elevation, but that appropriate higher-level authorities consider whether the correct level for the branch chief position should be GS–13 or GS–14. The next step was for the Army to decide whether it accepted or rejected the recommendations of the Civil Service Commission examiner.

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1970).

1. This post was a GS–14 position while Dr. Wade held it but was downgraded to GS–13 in July 1974. Appellant later characterized this downgrading as part of the discrimination against him, and the Army so found. (*See* note 4, *infra*).

2. While the discrimination complaint was pending before the Commission examiner after hearing, but before his report, the Army sent appellant and others (on December 1, 1975) a notice of reduction-in-force (RIF) abolishing the entire Biomaterials and Evaluation Division. For discussion of this RIF, *see infra*, especially Part I of this opinion.

3. Under the 1972 amendment (Equal Employment Opportunity Act of 1972) to Title VII of the Civil Rights Act of 1964, and the implementing regulations, an award of back pay is limited to the two-year period prior to the filing of the administrative complaint charging discrimination. *See* 42 U.S.C. § 2000e–5(g) (Supp. II 1972); 5 C.F.R. § 713.271(b)(i) (1975).

On January 23, 1976 the Army (1) accepted the examiner's finding of discrimination in appellant's nonselection as branch chief; (2) ordered appellant retroactively promoted with back pay to branch chief, as a GS–13 position, as of December 29, 1974 (the day the position was filled by Dr. Dillon) rather than December 3, 1973 (when the vacancy occurred); and (3) deferred decision (until further information was supplied) on the questions whether appellant deserved retroactive promotion to GS–14 and whether the branch chief position was downgraded to grade GS–13 for discriminatory reasons.[4] (Purporting to implement this decision of its own, the Army subsequently cancelled (in February 1976) the RIF notice sent to appellant in December 1975 (see note 2, supra), but the next day sent him a new RIF notice reducing him to GS–12, effective April 18, 1976.)

Appellant immediately appealed the adverse aspects of the Army's decision of January 23, 1976, to the Appeals Review Board of the Civil Service Commission (as the regulations authorized him to do) but, before that body could act, he filed his first complaint in the District Court against the Secretary of the Army, Kulkarni v. Hoffman, C.A. No. 76–347 (D.D.C., filed March 1, 1976), to compel the Army to comply more completely with the Commission Examiner's conclusions and to grant additional relief. Jurisdiction was asserted under Title VII of the Civil Rights Act of 1964, as amended; the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976); and other statutes. On appellant's motion for partial summary judgment and the Government's motion to dismiss, Judge Flannery held (in a memorandum opinion of June 21, 1976, as modified by a supplemental memorandum and order of July 30, 1976): (1) 5 C.F.R.

§ 713.220(d) (1976) provides that the agency (the Army) must issue its final decision on a discrimination complaint within 30 days after a recommended decision by the Commission examiner favorable to the employee, or the agency will be bound by the examiner's recommendation; (2) since January 23, 1976 (the date of the Army's decision) was the 30th day after the examiner's decision, the Army had no right to defer decision on any part of appellant's discrimination complaint, the subsequent Army decision of April 1976 attempting to settle the deferred portion (see note 4, supra) was a nullity, and accordingly the "final decision binding on the agency," 5 C.F.R. § 713.220(d), was composed of the Army's decision of January 23, 1976, plus those matters decided by the examiner which the Army sought to postpone; (3) under that view, appellant was entitled, not only to the relief already given him by the Army in the January 23rd decision, but also to retroactive promotion to GS–14 as of February 18, 1973 (the date the examiner had chosen) together with an independent, retroactive promotion to branch chief (as a GS–14 position) as of December 29, 1974; and (4) the court had jurisdiction under the Administrative Procedure Act to grant that much relief because the APA required the Army to abide by any controlling regulation. Judge Flannery then went on to rule that the court had no jurisdiction of the segments of appellant's action which were founded only on Title VII because the suit was filed, contrary to that Act, less than 180 days after the appeal to the Civil Service Commission's Appeal Review Board. See 42 U.S.C. § 2000e–16(c) (Supp. II 1972).[5] Jurisdiction of those portions of the complaint could not be grounded alternatively on such legislation as the Tucker Act, 28 U.S.C. § 1346(a)(2) (1970); 28 U.S.C. § 1331

**4.** Later, after Dr. Kulkarni had brought his first suit, the Army decided (in April 1976) that he should be retroactively promoted to GS–14 (with back pay), but only as of December 3, 1973 (when the branch chief position became available); The Army's finding was that the declassification of that post from GS–14 to GS–13 was motivated by discrimination against appellant. This additional decision by the Army was subsequently set aside by the District

Court, in Kulkarni's first court suit, as beyond the Army's power at the time it was made. See infra.

**5.** The District Court also refused to consider Dr. Kulkarni's claim that his RIF was discriminatory because appellant had not then completed the course of his administrative remedies on that issue.

(1970) ("federal question" jurisdiction); and 28 U.S.C. § 1343 (1970) ("Civil rights and elective franchise"), because the Title VII remedy was exclusive for federal employees alleging discrimination as a ground of recovery, *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Appellant's request for attorney's fees was rejected on the ground that the Administrative Procedure Act contained no authorization for such payments and the court had at that time no jurisdiction under Title VII (which does provide for such fees).

Neither side appealed from this decision of Judge Flannery, but the Army's compliance with the court's order was slow. On October 5, 1976, more than 180 days having elapsed since his appeal from the Army's decision of January 23, 1976 to the Civil Service Commission, appellant brought a new action in the District Court against the Secretary of the Army, *Kulkarni v. Hoffman*, C.A. No. 76–1849 (D.D.C., filed Oct. 5, 1976), invoking Title VII and seeking to implement Judge Flannery's decision in the first suit as well as to gain further relief, particularly on the claim that the RIF and RIF notices were discriminatory and retaliatory. The next day, October 6, 1976—appellee says it was pure coincidence—the Army did promote appellant to the GS–14 level and made him branch chief at that level, all in accordance with the judgment in C.A. No. 76–347 (the first suit). However, a third RIF notice (issued November 3, 1976, and effective January 9, 1977) was sent to Dr. Kulkarni offering a GS–12 job.[6] This reduction became operative on January 9, 1977 but under the "safe pay" legislation Dr. Kulkarni will retain his pay at the GS–14 level for the two-year period until January 9, 1979. *See* 5 U.S.C. § 5337(a)(3) (1976); 5 C.F.R. §§ 531.501–.517 (1976).

Cross-motions for summary judgment were filed in the second suit (C.A. No. 76–1849). On March 29, 1977, Judge Flannery granted appellee's motion, overruling several contentions and holding that appellant was entitled to no further relief than he had already received as a result of C.A. No. 76–347; attorney's fees were also denied. This appeal is taken from that ruling but only three aspects are challenged: *first*, the court's refusal to inquire into and try the issue of whether the RIF was discriminatory (including retaliation); *second*, in any event, the refusal to order appellant retained at the GS–14 level; and, *third*, the refusal to award legal fees.

## I.

### THE REDUCTION–IN–FORCE (RIF)

■ The Government has consistently maintained that the RIF abolishing appellant's division, ordered in December 1, 1975 (and of which appellant received three successive notices), was valid and *bona fide*; Dr. Kulkarni, on the other hand, asserts that the RIF was in retaliation for his basic discrimination complaint (and was otherwise discriminatory against him)—and was therefore invalid under Title VII. In the first action, C.A. No. 76–347, the District Court refused to consider this contention essentially because at that time the court had no jurisdiction under Title VII. In the second suit, C.A. No. 76–1849, the court, which by then plainly was empowered to act under Title VII, refused to entertain the point because, in the court's view, appellant had failed both to pursue and exhaust all his administrative remedies and also to raise the issue in his complaint in that action. We agree with neither branch of this ruling.

When Dr. Kulkarni received (on December 1, 1975) his first RIF notice, he had two administrative paths from which to choose if he considered the RIF an act of reprisal for his filing with the agency of his discrimination complaint.[7] He could file an inde-

---

6. The Army meticulously cancelled the second RIF notice (*see* text after note 4, *supra*) which was supposed to have taken effect on April 18, 1976.

7. The regulations, 5 C.F.R. § 713.262(a) (1975), encompass under "reprisal" all allegations of "restraint, interference, coercion, discrimination, or reprisal in connection with the presen-

pendent charge of reprisal which would first be considered by the Army and then by the Civil Service Commission. 5 C.F.R. § 713.262(b) (1975). Or he could have his reprisal claim heard and considered as part of his basic equal employment opportunity (discrimination) complaint, already on file. 5 C.F.R. § 713.262(a). Appellant selected the former route[8] and filed a reprisal charge with the Army. That agency rejected the charge (in January 1976) and later the Civil Service Commission affirmed that action (in November 1976). Thus, appellant fully exhausted his administrative remedy with respect to his challenge to the RIF as retaliatory. Nothing in the regulations required him to file a separate discrimination complaint, based on the reprisal claim, simply because the examiner's hearing had already been held. He was explicitly given the other option which he took.

The District Court apparently considered that appellant was required to repeat this procedure with each subsequent RIF notice he received[9]—at least as to the final notice given on November 3, 1976, which became fully effective for Dr. Kulkarni on January 9, 1977. It is plain, however, that there was only one RIF—instituted in December 1975—and that the documents appellant received were successive *notices* which the Army considered appropriate because of the administrative or judicial relief appellant had obtained at various stages in his anti-discrimination proceedings. The Government treated the underlying RIF as single, and so did appellant.[10] The basic issue of whether the RIF was *bona fide* or, instead, in reprisal for appellant's filing of his administrative discrimination complaint persisted from December 1975 onwards. On

that question Dr. Kulkarni completely exhausted his administrative remedy—receiving a flat negative to his charge of retaliation—and there was no need for him to repeat the process. Appellee makes no suggestion that the Army's situation so changed between December 1975 and January 1977 that a RIF, which may well have been retaliatory or discriminatory at the earlier time, later became proper for after-occurring, independent, managerial (or organizational) reasons.

The District Court's other ground for refusing to consider the RIF was that it was not alleged in the complaint in this action, C.A. No. 76–1849. We do not stop to consider whether the complaint should be read to allege the wrongfulness of the RIF[11] because the record shows that in any event the issue was strongly raised by appellant in the course of his presentation on the cross-motions for summary judgment in this case. Both the court and appellee were adequately alerted to appellant's position that the RIF should be held retaliatory—and appellee did not claim surprise or that the issue was not properly in this case. The broad umbrella principle is declared in Fed. R.Civ.P. 15(b): "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." This general principle has been applied to motions for summary judgment. *See Fletcher v. Nostadt,* 205 F.2d 896, 897 (4th Cir.), *cert. denied,* 346 U.S. 877, 74 S.Ct. 126, 98 L.Ed. 385 (1953); *Hayes v. Philadelphia Transp. Co.,* 312 F.2d 522, 523 (3d Cir. 1963); *In re Zweibon,* U.S.App.D.C., 565 F.2d 742, 747–48 (1977).

---

tation" of an administrative discrimination complaint.

**8.** His discrimination complaint had already been heard, in July 1975, by the Civil Service Commission examiner (though it had not yet been decided).

**9.** As spelled out in the statement of facts, *supra*, he received three notices—the first in December 1975, the next on February 1, 1976, and the third in November 1976.

**10.** Only one RIF notice was issued to the other employees of the Biomaterials and Evaluation Division.

**11.** The complaint was filed on October 5, 1976, and the final RIF notice was not issued until November 3, 1976. It was not until November 9, 1976, that the Civil Service Commission finally decided that the basic RIF was not retaliatory. There are some references in the complaint to a reduction-in-force, which appellee says are "oblique" and not directed to the basic RIF instituted in December 1975.

At the very least, appellant should have been granted leave to amend his complaint under Fed.R.Civ.P. 15(a) ("leave shall be freely given when justice so requires"). The issue having been pressed, the court should not have granted summary judgment against appellant without affording him the opportunity to amend his pleading. *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 384–85 (9th Cir. 1960).

We conclude, accordingly, that the grant of summary judgment as to the RIF must be reversed, and the case remanded to proceed further on that issue.[12] Under *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), appellant would normally be entitled to a trial *de novo*, if he desires one, on his contention that the RIF was retaliatory and therefore discriminatory.

## II.

### STATUS AS GS–14

▮ Quite independent of his argument as to the RIF is appellant's separate claim that he should have been placed "in a viable, non-defunct" GS–14 position. There is good foundation for this contention in Judge Flannery's decision in the first case, C.A. No. 76–347 (as explained and modified by the judge's supplemental memorandum and order, dated July 30, 1976). That decision treated separately with the position of Chief of the Biomedical Materials and Applications Branch and with Dr. Kulkarni's personal grade level. For the latter the order was that he was to be "retroactively promoted to GS–14, effective February 18, 1973."[13] The retroactive promotion to branch chief was ordered separately in a provision of the order which directed that that promotion was to date from December 29, 1974.

In October 1976, as set forth above, the Government did make appellant branch chief retroactive to December 29, 1974 and also promoted him retroactively to GS–14, effective February 18, 1973. However, within a month the Army again notified appellant of a reduction to grade GS–12, effective January 9, 1977. That has been his grade level since that date, though his pay will continue (under the "safe pay" statute) at GS–14 level for two years until January 9, 1979.

The District Court below deemed appellant's point, that he has a right to continue in a GS–14 position, as wholly entwined with, and dependent upon, the claim that the RIF was improper. Since the court felt that it could not and should not entertain that RIF claim (*see* Part I, *supra*), it refused to consider the GS–14 point.[14] In this we think the court erred because it failed to take into account its prior decision in C.A. No. 76–347 which, as described above, ordered Dr. Kulkarni to be promoted—independent of his promotion to branch chief and aside from any RIF—to the personal grade of GS–14, effective February 18, 1973. We understand that specific part of the earlier decision—and the corresponding portions of the Commission examiner's report which the court's judgment implemented as the "final agency decision"—as resting on and remedying the discrimination which was expressly found to have been a factor in appellant's continued non-promo-

---

12. Though the complaint may be considered amended pursuant to this court's judgment, *In re Zweibon, supra*, the District Court may require a formal amendment if it considers that course appropriate.

13. It is important, in this connection, that the court also held that the "final agency action" binding on the Army Department included a finding that appellant "was discriminated against because of national origin * * * in the decision to pass over him for appointment to GS 14 positions which opened as early as the mid-1960's * * *."

14. Judge Flannery also felt that appellant's counsel, in oral argument, had conceded that the prior orders in C.A. No. 76–347 had already given Dr. Kulkarni all the relief to which he was entitled (other than with respect to the RIF) and therefore that no further orders were desired in the second suit. We do not so understand the brief and ambiguous colloquy to which the judge points, and counsel denies that that was her intention.

tion to GS–14 for over a decade. That specific and separate aspect of Judge Flannery's unappealed judgment in C.A. No. 76–347 still remains to be implemented and enforced.

To give appellant his proper relief under this provision of the final judgment in C.A. No. 76–347 we think that he is entitled to classification as a GS–14 from February 18, 1973 (the day chosen by the Civil Service Commission examiner) until he is no longer paid at GS–14 level, i. e., until January 9, 1979. The records should show him as holding a GS–14 grade throughout this period. After January 9, 1979, he should be offered the next available GS–14 position at Fort Detrick for which he is qualified and for which no one else has greater seniority.[15] The effect of this remedy will be to add to the seniority he can assert with respect to any such GS–14 post which is available at or after January 9, 1979. It will also insure that he receives any such position for which he is qualified and as to which no other qualified person has superior seniority.

It is, of course, not easy to tell at what grade level Dr. Kulkarni would be if he had not been discriminated against because of his birth in India. He does not ask us for a grade higher than GS–14 and that is the level at which Judge Flannery ordered him to be placed (in the first suit, C.A. No. 76–347). The problem then becomes: how long is he to be protected in that grade? On the one hand, his placement at that level should have sufficient duration to constitute an adequate remedy for the prior discrimination (at least the discrimination since the 1972 amendments to Title VII). On the other hand, he should not be made immune from a *bona fide* nondiscriminatory RIF in the future or other change in grade made on proper, nondiscriminatory grounds. Moreover, it is awkward and inefficient to compel him to be retained indefinitely in a GS–12 post (the one he now holds) with GS–14 status; presumably a GS–14 is overqualified for that position.

The solution we find equitably "appropriate" under Title VII, 42 U.S.C. § 2000e–5(g) (Supp. II 1972) and the teaching of *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 762, 96 S.Ct. 1251, 47 L.Ed.2d 444 *ff.*, is the one set forth immediately above. It gives Dr. Kulkarni GS–14 status from February 18, 1973 to January 9, 1979—almost six years— thus measurably adding to his seniority. It also gives him a good opportunity from now on, with the enhanced seniority, to obtain a true GS–14 position at Fort Detrick for which he is qualified.

These directions (in this Part II of the opinion) are wholly independent of any determination which may follow from consideration on remand of appellant's claim of retaliation/discrimination in the RIF already instituted by the Army (the issue discussed in Part I, *supra*). If that result is favorable to Dr. Kulkarni, he may well be entitled to further, more extensive relief than that we now order. But even if the result is wholly unfavorable to him, he will still be entitled at a minimum to the relief (with respect to his status as a GS–14) decreed in this Part II. The underlying predicate we have adopted for the purpose of considering this point is the relief to which appellant would be entitled if the RIF of 1975 was not invalid or improper.

### III.

### ATTORNEY'S FEES

■ In Dr. Kulkarni's first suit, C.A. No. 76–347, Judge Flannery denied attorney's fees because (a) insofar as the request was for compensation for services at the agency level, the motion was premature since appellant had not yet exhausted his remedies under Title VII, and (b) to the extent fees were sought for court services in that action there could be no award because jurisdiction existed and relief was granted only under the Administrative Procedure Act which does not authorize a fee award. In the decision in the second suit, C.A. No. 76–1849, brought under Title VII which

---

**15.** It goes almost without saying that if such a GS 14 job happens to become available prior to January 9, 1979, appellant should also be offered that opportunity.

does permit a fee-award to the non-governmental "prevailing party," the court refused fees because appellant obtained no further relief than already awarded in the first action and was therefore not a "prevailing party" in the second, Title VII, suit. It is only the fee ruling in the later suit which is now before us for review.

We do not have to decide whether appellant could still recover, in this action, for legal services at the administrative level if we affirmed all the substantive holdings of the District Court below.[16] The case is now in a different posture. We uphold the appeal with respect to (1) the District Court's failure to consider appellant's claim that the RIF first instituted in December 1975 was retaliatory and discriminatory and (2) the failure to direct that Dr. Kulkarni should have been given the personal grade of GS–14 (regardless of the proper grade of the position he held or holds). As we now explain, both grounds of reversal entitle appellant to call himself a "prevailing party" under the fee provision of Title VII, 42 U.S.C. § 2000e–5(k) (1970).

If there had been no prior administrative determination of discrimination against Dr. Kulkarni and no prior decision of the District Court confirming that finding, *Grubbs v. Butz*, 179 U.S.App.D.C. 18, 548 F.2d 973 (1976), might bar a fee award founded on our remand for consideration by the trial court of the claim of reprisal/discrimination in the RIF. *Grubbs* precluded an award, at that early stage, to a plaintiff who had won a preliminary procedural victory in this court but had not yet had a chance to establish any discrimination against her. But we consider *Grubbs* inapplicable here because appellant has already shown dis-

crimination by his agency, though he has not yet had a proper opportunity to demonstrate that the discrimination also included reprisal through the RIF. The thrust of *Grubbs* was that that employee, although she had prevailed on her interlocutory procedural appeal, had not yet shown *any* discrimination: " * * * we cannot believe Congress would have countenanced assessing fees against a defendant absent *any* showing of discrimination. For all that we now know, the defendants in this case may be entirely blameless." 179 U.S.App.D.C. at 21, 548 F.2d at 976 (footnote omitted; emphasis added). At the same time, the opinion recognized and apparently accepted earlier decisions of other courts allowing fee awards to parties who had sustained some but not all of their discrimination claims. 179 U.S.App.D.C. at 19, 548 F.2d at 974. Appellant is in the position of having already sustained a substantial (probably the major) portion of his claims of discrimination, and he prevails here on the procedural issue of his right to show *further* discrimination through the use of the RIF. We think this combination makes him a "prevailing party" entitled to legal fees.[17]

In any event, appellant has plainly satisfied all the requirements with respect to the second substantive ground for reversal, *i. e.*, placement in the GS–14 grade (*see* Part II, *supra*). If that point alone had been presented on this appeal, the additional relief we direct would be significant enough, by itself, to warrant calling appellant the "prevailing party" in this action.

The remaining issue is whether the fee award in this action can also take into consideration the legal work done at the administrative level and in the first suit, C.A.

---

**16.** In that event it could be argued—as appellee does contend—that (a) appellant was not a "prevailing party" in *this* court litigation under Title VII even though he was successful in his administrative proceedings, and (b) *this* suit, C.A. No. 76–1849, was brought after the administrative proceedings had ended and relief had been awarded, and the grant of administrative relief did not follow upon and was not caused by the filing of the present action (unlike *Parker v. Califano*, 182 U.S.App.D.C. 322, 561 F.2d 320 (1977), and *Foster v. Boorstin*, 182 U.S.

App.D.C. 342, 561 F.2d 340 (1977)). Appellant, of course, takes the opposing position.

**17.** Unlike the employer in *Grubbs*, appellant's employer has already been shown not to have been "entirely blameless"; it is not unfair to impose legal fees on the employer (even though the validity of the RIF is still undecided), just as it is not unfair to saddle an employer with attorney's fees where the employee proves part, but not all, of his claims of discrimination.

No. 76–347. The answer must be affirmative—the award can and should cover all legal work, up to now, which was reasonably appropriate to the end-result. It is settled in this circuit that, if the employee prevails, the attorney's compensation award properly includes legal services rendered at the administrative level before (or after) filing of the court complaint under Title VII. *Parker v. Califano, supra,* 182 U.S. App.D.C. 322, 561 F.2d 320 (1977); *Foster v. Boorstin, supra,* 182 U.S.App.D.C. 342, 561 F.2d 340 (1977).[18] The court has also indicated coverage for legal services performed in prior court litigation pertaining to the same discrimination claim (such as the first suit here). *See Grubbs v. Butz, supra,* 179 U.S.App.D.C. at 22, 548 F.2d at 977. We think it immaterial in this instance that the first suit was held not sustainable under Title VII but only under the Administrative Procedure Act.[19] The holding of the first suit—in which appellant clearly prevailed in a significant way—is a necessary predicate for a large part of his claim in the present action and, as this opinion shows, furnishes a very important reason why he prevails now. Though the fee provision of Title VII, 42 U.S.C. § 2000e–5(k), authorizes an award of fees in a court suit only if that litigation is brought under Title VII (as is the present action) the literal terms of that clause[20] do not preclude consideration in setting the award of services rendered in so closely and integrally connected a prior non-Title VII case as the first suit here.[21] The purpose of Title VII to encourage and abet vindication by covered employees (including federal personnel) of their rights against discrimination calls for such a broad, liberal, and sensible reading of the fee provision. *See Parker v. Califano, supra,* 182 U.S.App.D.C. at 332–35, 561 F.2d at 330–33.[22]

## IV.

### CONCLUSION

For these reasons, we reverse the judgment of the District Court insofar as appealed from, hold that appellant is entitled to the status of grade GS–14 as prescribed in Part II, *supra,* remand for further proceedings on the claim that the 1975 RIF was the result of reprisal-discrimination (*see* Part I, *supra* ), and remand for a deter-

---

**18.** The statutory reference to the court's "discretion" does not authorize a refusal to award any fees to a prevailing plaintiff unless special circumstances would render such an award unjust. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Parker v. Califano, supra,* 182 U.S.App.D.C. at 332, 561 F.2d at 330; *Foster v. Boorstin,* 182 U.S.App.D.C. at 345–46, 561 F.2d at 343–44; *Lea v. Cone Mills Corp.,* 438 F.2d 86, 88 (4th Cir. 1971). There is no such suggestion here.

**19.** The Supreme Court subsequently held that the latter statute could not be used in the district courts as a basis for subject-matter jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977).

**20.** 42 U.S.C. § 2000e–5(k) (1970) provides: "In any action or proceeding under this subchapter [Title VII] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the cost, and the Commission and the United States shall be liable for costs the same as a private person."

**21.** If appellant had persuaded the Army, through counsel, to give him administratively the relief granted by Judge Flannery in the first suit, the fee award in the present case could plainly embrace that legal service. *See Parker v. Califano, supra; Foster v. Boorstin, supra.* It would be odd to deny the fee simply because appellant had to go to court to enforce his right through a non-Title VII proceeding.

**22.** Our decision that the fee award should take account of the administrative proceedings as well as the first suit is particularly appropriate since Judge Flannery held in the prior litigation that he could not then award fees because he had no jurisdiction at that time under Title VII and he intimated that the matter could be different after appellant was able to proceed in court under Title VII. The judge said: "To the extent plaintiff seeks compensation for services at the agency level, the motion [for attorney's fees] is premature because he has not yet exhausted his full remedies under the Civil Rights Act. To the extent he seeks fees for services rendered in the instant action, the motion must be denied because there is no statutory authority for the award of fees in cases brought under the Administrative Procedure Act."

mination of a reasonable attorney's fee as prescribed in Part III, *supra*.

*Reversed and remanded.*