**Kenneth W. DAVIS, Plaintiff,**

v.

**William F. BOLGER, Defendant.**

**Civ. A. No. 78–1789.**

United States District Court,
District of Columbia.

Feb. 20, 1981.

See also, D.C., 496 F.Supp. 559.

Lawrence S. Lapidus, Washington, D. C., for plaintiff.

Whitney M. Adams, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

On September 22, 1978, plaintiff filed a complaint alleging that defendant Postal Service had violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, by denying him a promotion on the basis of race, sex, color and age. After trial, the Court found, on July 29, 1980,[1] that plaintiff has not made a *prima facie* showing of discrimination, and that even if such a showing had been made, defendant had demonstrated legitimate non-discriminatory reasons for the denial of promotion. Although the Court denied plaintiff's Title VII claims on that basis, it granted relief on a different issue not directly related to whether or not plaintiff had suffered discrimination at the hands of the Postal Ser-

---

1. 23 FEP 1159 (D.D.C.1980).

vice: that is, in response to information that the Postal Service allowed employees testifying on its behalf to claim paid leave to their time in court while compelling employees testifying for plaintiff to take annual leave or leave without pay,[2] the Court ordered that plaintiff and his witnesses be compensated to the same extent as were defendant's witnesses. On August 7, 1980, defendant moved the Court either to reopen this judgment so as to receive additional evidence on the witness compensation issue, or to remand the judgment so as to strike out that portion ordering the compensation of plaintiff and his witnesses. Both parties thereupon briefed this issue extensively, and the Court denied defendant's motion in a Memorandum Order dated November 7, 1980.

Plaintiff's counsel Mr. Lawrence S. Lapidus, now moves the Court to grant him attorney's fees and costs to compensate him for the time expended upon the witness compensation issue.[3] This motion requires the Court to make two separate inquiries: first, is plaintiff a "prevailing party" within the terms of section 706(k) of Title VII[4] such that he is entitled to a reasonable attorney's fee, and second, if plaintiff is so entitled, what would constitute a reasonable fee in this case?

## I

■ Defendant argues that plaintiff cannot be considered to be the "prevailing party" on any claim for the purposes of section 706(k) because he clearly did not prevail on his discrimination claim. In support of this proposition, defendant cites *Grubbs v. Butz*, 548 F.2d 973 (D.C. Cir. 1976), where the court held that an award of an interim attorney's fee to a Title VII plaintiff who had prevailed on an interlocutory appeal but had not yet established discrimination on the merits was inappropriate.

Although it is true that plaintiff did not demonstrate unlawful discrimination in his denial of promotion, the Court did find that defendant had erected an unnecessary and harmful obstacle in the path of plaintiffs pursuing discrimination claims contrary to the policies underlying Title VII.[5] The Court found that "the practice of differentially compensating plaintiffs' and defendants' witnesses in Title VII cases impedes the effectuation of the anti-discrimination policies embodies in [Title VII]," November 7, 1980, Memorandum Order, p. 3, and for that reason, ordered that plaintiff and his witnesses be paid for their court attendance. In the view of the Court, there can be no doubt but that plaintiff has prevailed on a claim rooted in the antidiscriminatory mandate of Title VII.[6]

■ One of the purposes served by the fee award provision of Title VII is to deter actions on the part of employers at variance with the spirit and the letter of the statute. See *Copeland v. Marshall*, 641 F.2d 880, 890, (D.C. Cir. 1980) [*Copeland III*]. An award of fees in this case would presumably deter

2. This issue was not mentioned in the complaint, but was raised by plaintiff's counsel during the course of trial.

3. Mr. Lapidus also seeks a fee award for the services of another attorney, Mr. Solaman G. Lippman, with whom Mr. Lapidus consulted in drafting the opposition defendant's motion to alter or amend the judgment. See p. 8, *infra*.

4. Section 706(k) provides that
[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs. . . . 42 U.S.C. § 2000e–5(k).

5. Compare *Smith v. Secretary of the Navy*, No. 79–1877 (D.C. Cir. January 30, 1981), where a

plaintiff who was unable to demonstrate that he had suffered discrimination on account of his race but was found to have been subject to an unfavorable supervisory evaluation as a result of his EEO activities (p. 16) was held to be a "prevailing party" under section 706(k) and entitled to attorney's fees.

6. This is clearly distinguishable from *Grubbs supra*, where the plaintiff had only prevailed on an interlocutory procedural issue, and where the court stated that, "[f]or all we now know, the defendants in this case may be entirely blameless." *Grubbs v. Butz, supra*, 548 F.2d at 976. In the present case, it has already been determined that defendant is not blameless but has acted contrary to the mandate of Title VII.

the Postal Service and other government agencies from actions that unlawfully place Title VII plaintiffs at a disadvantage with respect to their governmental employers as they pursue their discrimination claims through the courts. Requiring the Postal Service to pay counsel's fee here would thus serve to effectuate a major purpose underlying section 706(k).

Another purpose underlying the attorney's fee provision is to encourage private individuals injured by racial discrimination to seek the relief made available under Title VII—to act, in essence, as "private attorneys general" in the enforcement of the laws prohibiting discrimination in employment. In furtherance of that end, many courts, including those in this Circuit, have held that "statutes authorizing award of attorneys' fees as part of private enforcement schemes in the Civil Rights Act should be broadly interpreted." *Parker v. Califano*, 561 F.2d 320, 330 (D.C. Cir. 1977); *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187–189 (D.C. Cir. 1974). This policy becomes more compelling when, as here, the defendant is a federal agency. Title VII does not authorize the Attorney General or the EEOC to bring suits on behalf of federal employees, who cannot rely on a public enforcement mechanism to protect their right to freedom from employment discrimination in court (*Copeland III, supra,* 641 F.2d at 895; *Parker v. Califano, supra,* 561 F.2d 331) and who therefore may be said to be more urgently in need of the "private attorney general" assistance than others.

In a very real sense, plaintiff's counsel acted in just that capacity in this case. The bulk of the work performed by him on the witness compensation issue occurred in response to defendant's motion to amend or alter the Court's judgment of July 29, 1980 —that is, after the individual discrimination claim of Kenneth Davis had been denied. Counsel pursued the matter, moreover, in spite of the fact that he would not be compensated for his efforts by his client.[7] In his own words, he "found himself obligated to proceed on this issue in order to secure the important principle of witness compensation on an equal basis for *all* federal workers." Memorandum in Support of Motion for Attorneys' Fees and Costs (November 20, 1980) p. 2. That he prevailed on this issue inures not only to the benefit of plaintiff's witnesses, but also to the benefit of federal employees generally who may seek the vindication of their rights under Title VII through the courts.

Accordingly, the Court finds that plaintiff is a "prevailing party" under section 706(k) of the Title VII with regard to the witness compensation issue, and is therefore entitled to a reasonable attorney's fee for the work performed thereon.

## II

The most recent discussion by the Court of Appeals in this Circuit of what constitutes a "reasonable attorney's fee" under section 706(k) appears in *Copeland III, supra,* 641 F.2d 889. Under that Opinion, the District Court is required to begin with a "lodestar" fee-setting formula, consisting of "the number of hours reasonably expended multiplied by a reasonable hourly rate." 641 F.2d at 891. The resulting figure should form the basis of the fee at which the court arrives. 641 F.2d at 891.

To determine a "reasonable hourly rate," the Court must look to the rate "prevailing in the community for similar work." 641 F.2d 892.[8] Factors to be taken into consid-

---

7. It is assumed that Mr. Davis decided not to appeal the judgment denying his discrimination claim, and therefore had no reason to continue paying his lawyer for further work.

8. The parties' briefs have not been helpful to the Court in making this determination. Plaintiff's counsel arrived at the conclusion that $85.00 per hour is a reasonable hourly rate for a lawyer with 5 to 10 years of experience, but he gives little support for this figure other than the statement that an unspecified number of other lawyers are of that opinion. Defendant asserts that this figure is unreasonable, but supports its assertion with cases determining fees for services rendered either two or three years ago, or in a different geographical area. Neither party offered evidence (in the form of affidavits or otherwise) other than unsupported statements in its briefs as to what a reasonable rate would be in this case.

eration relevant to this litigation include the level of experience and reputation of the attorney, the difficulty of the issues involved, the level of skill necessary, and the undesirability of the case. *Copeland III, supra,* 641 F.2d at 892; *Evans v. Sheraton Park Hotel, supra,* 503 F.2d at 187–88. Plaintiff's counsel contends that an hourly rate of $85.00 would be reasonable. See note 8, *supra.* He finds support for this rate in his approximately six years of experience, largely in labor and Title VII law, an advanced law degree, and the undesirability of the case, "as it involved extensive discovery proceedings and mastery of the Postal Service's complex promotion procedure." Affidavit of Lawrence S. Lapidus, Esquire, in Support of Petition for Attorney's Fees.

The Court finds $85.00 per hour to be excessive for work by a relatively young attorney on an issue which, though novel, was not exceedingly complex. In a recent case decided by this Court, an attorney with over eighteen years of experience in civil rights litigation was awarded $85.00 per hour for work performed during the year of 1979, and his associate with five years of experience was awarded $50.00 per hour. *Marimont v. Califano,* No. 73–1992 (D.D.C. May 10, 1979) p. 3. Even adjusting for a year's worth of inflation would not produce a figure comparable to $85.00 for plaintiff's counsel with his six years of practice. The difficulty of the issues involved do not mandate a heightened hourly rate; although the witness compensation issue is novel, it is not extremely complicated and the "extensive discovery proceedings" and "the Postal Service's complex promotion procedure" cited by Mr. Lapidus were relevant to plaintiff's discrimination claim only and not to the witness compensation claim upon which he prevailed.

The Court agrees that it may have been "undesirable" for Mr. Lapidus to proceed with the case once plaintiff's discrimination claim was rejected, given the expectation that compensation for further efforts would

not be forthcoming. But an upward adjustment in rate to allow for this undesirability would still not yield $85.00 per hour. Based upon Mr. Lapidus's background, his six years of experience, and the fact that he is seeking compensation for work on a previously unexplored but not extremely complex issue for which the prospect of payment were not good, the Court finds that an award of $70.00 per hour would constitute a "reasonable hourly rate."

Plaintiff requests compensation for 32.4 hours of work, and details how this time was expended in an affidavit. Upon review of this affidavit, the Court finds that all of the 32 hours except the 4.8 hours attributed to the drafting of the complaint were "reasonably expended" on the witness compensation issue under the *Copeland III* standard, and compensation for them will be granted. Nowhere in the complaint was the differential compensation of plaintiff's and defendant's witnesses even mentioned. See note 2, *supra.* For that reason, it is clear that the 4.8 hours expended on drafting the complaint must have been "time spent litigating claims upon which the party seeking the fee did not ultimately prevail," *Copeland III, supra,* 641 F.2d at 891–892, and compensation for them must be denied.[9]

### III

In *Copeland III, supra,* the Court of Appeals, quoting the District Court opinion, warned against a mechanical approach to the computation of fees. 641 F.2d at 888. However, it also noted that "the burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." 641 F.2d at 892.

Plaintiff proposes an upward adjustment of the lodestar figure for two reasons: first, because *Copeland III* allows for "upward contingency adjustments" "to compensate for the possibility at the outset that the litigation would be unsuccessful" 641 F.2d at 893; and second, because *Copeland III* provides for such an adjustment to re-

**9.** The sum of $13.00 allocated by plaintiff's counsel to the costs of filing suit and service of

process will also not be included in the costs for which he will be compensated.

flect the delay in counsel's receipt of payment. 641 F.2d at 893.

The Court does not find that an upward contingency adjustment of the lodestar figure would be appropriate. Extra compensation for potentially unsuccessful litigation is suggested in *Copeland III* where the risk of failure is apparent "at the outset" of the litigation. However, in the present case, plaintiff's counsel could not know at the outset of the litigation that there was a risk of failure, since he did not know that the issue upon which he would eventually prevail would even be raised or considered by the Court. As far as the delay in receipt of payment is concerned, the *Copeland III* court stated that

> if the 'lodestar' itself is based on *present* hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered, the harm may be largely reduced or eliminated. 641 F.2d at 893, n.23.

The Court believes that the rate of $70.00 per hour is appropriate for the present time, and that therefore an upward adjustment to compensate for delay is unnecessary. For these reasons, the Court finds that plaintiff has not carried the burden of an upward deviation from the lodestar, and no such adjustment will be granted.

Defendant argues that the lodestar should be adjusted downwards, due to "the Court's unequivocal holding for the defendant on the merits, and plaintiff's counsel's lack of productive contribution to the final resolution of the issue on which plaintiff prevailed." Opposition to Plaintiff's Motion for Attorney's Fees and Costs (December 1, 1980) p. 8. *Copeland III* states that "a quality adjustment is appropriate only when the representation is unusually good or bad." 641 F.2d at 893. It can certainly not be said that the quality of Mr. Lapidus' representation was unusually bad, and therefore the Court will not decrease the lodestar figure.

IV

■ Mr. Lapidus also asks that Mr. Solamon Lippman, an attorney with whom he consulted on the witness compensation issue, be compensated at a rate of $125.00 per hour for 3.5 hours of work. Aside from the fact that the Court views this hourly rate as somewhat high, and that plaintiff's brief gives the Court no basis upon which to judge whether the rate is "prevailing in the community for similar work," see p. 5, *supra*, plaintiff has not convincingly demonstrated that the time Mr. Lippman expended was not duplicative and unnecessary. See *Copeland III, supra*, 641 F.2d at 891. Accordingly, to the extent Mr. Lapidus' motion for fees encompasses Mr. Lippman's claim, it will be denied.[10]

For the reasons stated above, it is this 20th day of February, 1981,

ORDERED That plaintiff's motion for attorney's fees and costs be and it is denied insofar as it applies to the services of Mr. Solaman Lippman, and it is further

ORDERED That plaintiff's motion for attorney's fees, at an hourly rate of $70.00 for 27.6 hours expended, and for costs of $63.15 be and it is hereby granted, and it is further

ORDERED That plaintiff's counsel be and he is hereby awarded the sum of $1,977.15 in attorney's fees and costs, and it is further

ORDERED That defendant shall remit to plaintiff's counsel the sum of $1,997.15 not later than 20 days from the date of this order.

---

10. Plaintiff's counsel also moves for costs of $76.15. Other than the $13.00 attributed to the filing and serving of the complaint, see note 9, *supra*, defendant appears to have no objection to these costs, and neither does the Court. Therefore, costs of $63.15 will be granted.