Douglas H. **STUP**, Plaintiff,

v.

William F. **BOLGER**, Postmaster General, Defendant.

Civ. A. No. 83–0205–A.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 7, 1984.

Glenn P. Sugameli, Washington, D.C., for plaintiff.

Lawrence S. Lapidus, Washington, D.C., for petitioner Blevins.

Joan Goodrich, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the Petition of Ernest Blevins requesting the court to restore sixteen (16) hours of annual leave that Mr. Blevins was forced to take as a result of testifying as a subpoenaed witness in this Title VII case. Mr. Blevins also seeks an award of counsel fees and costs incurred as a result of pursuing this Petition. Defendant, the United States Postal Service, opposes the Petition, alleging that the Postal Service regulations bar relief.

### I

The facts are not in dispute. Douglas Stup, plaintiff in the principal case, brought a complaint under Title VII of the Civil Rights Act of 1964 against the Postal Service. The case was heard by this court in a bench trial on July 18 and 19, 1983. Pursuant to subpoena, petitioner Blevins, who was also an employee of the Postal Service, testified in this case on behalf of plaintiff Stup.[1] On July 14, 1983, several days prior to trial, Mr. Blevins discussed his leave status with Mr. Biscoe, who was Assistant Director of Employee and Labor Relations

---

**1.** On September 14, 1983, this court denied plaintiff Stup's complaint for race and sex discrimination, but found in his favor on a retaliation charge.

at the Merrifield, Virginia Postal Facility. Mr. Biscoe advised Mr. Blevins that he would be on a pay status as a trial witness, and would receive court leave for his time. An administrative leave slip to that effect was issued on July 14, 1983. A few days after testifying on plaintiff's behalf, Mr. Blevins was advised by his supervisor, Steven Dane, that the leave status had been changed to leave without pay. As a result, in accordance with Postal regulations, Mr. Blevins could either not be paid for those sixteen hours, or could use two days of his annual leave time. Mr. Blevins chose to use the annual leave time, and now seeks restoration of the original court leave status and a recrediting of the sixteen hours to his accrued annual leave.

## II

The defendant opposes petitioner's request and relies on the Postal regulations as found in § 516.43 of the Employee & Labor Relations Manual (ELM). Basically defendant's position is that, pursuant to the regulations, witnesses who testify on behalf of the government receive court leave, regardless of whether or not that testimony is given in the employee's official capacity. Conversely, witnesses who testify for the party opposing the government, even if subpoenaed, are not entitled to receive court leave unless the employee testifies in his or her official capacity.[2]

The court finds this policy to be patently unfair. The chilling effect that this policy has on Postal employees who are subpoenaed to testify by parties opposing the government is obvious. The imbalanced leave policy makes it much more advantageous for a witness to be favorable to the government than to a party opposing the government, since government witnesses are on a leave with pay status, while witnesses for parties opposing the government are on a leave without pay status. *See Davis v. Bolger*, 496 F.Supp. 559 (D.D.C.

1980) (where the court noted that it is not fanciful to speculate that this differentiating leave policy could color a witness's testimony. *Id.* at 565 n. 27).

It is essential to our system of justice that the courts be free to receive the testimony of witnesses who have knowledge of the facts, and that those witnesses be free to impart that knowledge, unhampered by administrative policies or hurdles which have the effect, if not the intent, of discouraging a potential source of information for the court. Clearly, the Postal Service should not be allowed to subvert this fundamental tenet of our system by discouraging the testimony of an opposing party's witnesses through the enforcement of an inequitable leave policy.

Virtually the same issue aróse in *Davis v. Bolger, supra.* Confronted with facts substantially similar to the case at bar, the court in *Davis* noted:

> The government's practice of paying witnesses for the [Government] in Title VII cases for their appearance in court but refusing to make similar payment to plaintiffs' witnesses cannot be squared with the Civil Rights Act of 1964 and the Equal Employment Opportunity Act of 1972. Congress enacted Title VII in order "to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment." The statute was designed to afford to those suffering from discrimination an efficacious remedy, unencumbered by unnecessary difficulties and obstacles. For that reason, it must be, and has been, liberally construed to achieve its objectives. (Citations and footnotes omitted.) *Id.* at 564.

The facts in the instant case are even more egregious than those in *Davis*. Mr. Blevins was originally advised that he would receive court leave for the time taken to testify, pursuant to subpoena, for

---

**2.** The Postal Service admits that, pursuant to 5 U.S.C. § 6322 (1980) all other government employees are compensated for *any* witness service where the government is a party, but contends that this statute is inapplicable to Postal Service

employees. While this court does not make a ruling on the applicability of the statute to the Postal Service, this contrast in policies does evidence how anomalous the Postal Service's position is.

plaintiff Stup. Three days after the testimony was given, the Postal Service, apparently unhappy with the content of Mr. Blevins' testimony, changed Mr. Blevins' status to leave without pay. To avoid not being paid for the time missed, Mr. Blevins was forced to apply two days of his personal annual leave to that time missed. In *Davis* no such representations were made.

Although Mr. Blevins is not a *per se* Title VII plaintiff, in that he has not complied with the administrative procedures required thereunder, Title VII is still instructive regarding general policy considerations. Clearly this leave policy, and its application in the instant case, does not square with general notions of fairness, nor with the need to eradicate discriminatory practices through effective redress in the courts.

In an effort to prevent this unjust onus on an opposing party's witnesses, this court will not allow the Postal Service to effectuate the leave policy against Mr. Blevins, and will require that he be granted court leave for the time missed, and that his sixteen (16) hours of annual leave be restored. Again, this court feels constrained to point out that the court is cognizant of the fact that Mr. Blevins is not a *per se* Title VII plaintiff. However, this court feels justified in deciding the issue now rather than awaiting the exhaustion of the agency administrative requirements, under general principles of equity. *See Davis v. Bolger*, 496 F.Supp. at 567 n. 35 and accompanying citations.[3]

Defendant also sets forth the argument that the leave provision is part of the collective bargaining agreement between the Postal Service and the postal union, and that, as such, the terms can only be changed through the collective bargaining process. The court does not find this argument to be persuasive. As the Supreme Court indicated in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981), statutory rights which devolve upon the individual worker are independent of the collective bargaining agreement. In addition, the Court has held that Title VII rights cannot be waived or impaired by collective bargaining agreements. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). In light of these authorities, and particularly in light of *Davis*, the court feels justified in ordering that Mr. Blevins' sixteen hours of annual leave be restored, and that he be paid court leave for his time as a witness in this case.

The court further feels that an award of attorneys' fees and costs incurred by Mr. Blevins in connection with this Petition should be granted. In a subsequent proceeding in the *Davis* case, *supra*, attorney's fees were also awarded. *Davis v. Bolger*, 512 F.Supp. 61 (D.D.C.1981).

Since Mr. Blevins is not a *per se* Title VII plaintiff, the court is hesitant to rely on 42 U.S.C. § 2000e–5(k) as authority for granting this award. However, this does not preclude the court from making an award. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), recognized exceptions to the general American rule that litigants bear their own costs of litigation. One exception is where the losing party has "... acted in bad faith, vexatiously, wantonly or for oppressive reasons...." In the case at bar, defendant acted in bad faith by initially approving Mr. Blevins' request for court leave, and then changing that status to leave without pay after Mr. Blevins testified on behalf of plaintiff Stup. It should be noted that because of the subpoena Mr. Blevins had no choice but to testify. Apparently the Postal Service was unhappy with the content of Mr. Blevins' testimony and sought to penalize him through application of the leave policy. This is patently unfair and evidences bad faith by the Postal Service.

---

**3.** Note that the court in *Davis* also indicated that recourse to agency procedures would be futile in light of the Postal Service's position, and as such, exhaustion of the administrative remedies would not be a prerequisite to disposition of the matter by the district court.

**1398**

What is particularly disturbing about the case at bar is that since the *Davis* case in 1981, the Postal Service was on notice that judicially this policy was considered infirm. Despite this knowledge, the Postal Service apparently made no effort to change the leave policy, either through the collective bargaining process or otherwise. Instead, the Postal Service has effectuated an approach of inactivity toward any change of the policy, and has chosen to continue to reap the benefits the policy bestows, rather than in good faith strive to eradicate the obvious inequities of the policy. The Postal Service cannot be allowed to hide behind their collective bargaining agreement with the postal union as justification for their continued enforcement of an unjust, discriminatory leave policy. The Postal Service has known since 1981 that the policy is infirm, and yet has continued enforcing it in a plainly discriminatory manner. In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Court stated that an employer had exhibited bad faith by maintaining a practice which he knew to be illegal or of highly questionable legality. *Id.* at 422, 95 S.Ct. at 2373. The court is justified in exercising its equitable, discretionary powers in awarding attorney's fees and costs to Mr. Blevins under the "bad faith" exception to the general rule that litigants must bear their own costs. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 419, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Robinson v. Ritchie*, 646 F.2d 147, 148 (4th Cir.1981).